## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |
|---|---|
| PAUL PAYNE, GLENDALY FELIX, TYRONE HENDRICKSON, ANNETH EVELYN and NANCY PAULINA,<br><br>Plaintiffs,<br><br>v.<br><br>CAROLINE FAWKES, in her Individual Capacity, and in her Capacity as Supervisor of Elections for the U.S.V.I., and the JOINT V.I. BOARD OF ELECTIONS,<br><br>Defendant. | Civil Action No. 2014-053 |
| SENATOR ALICIA "CHUCKY" HANSEN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLINE FAWKES, in her Individual Capacity, and in her Capacity as Supervisor of Elections for the U.S.V.I., and the JOINT V.I. BOARD OF ELECTIONS,<br><br>Defendant. | Civil Action No. 2014-055 |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Rhea Lawrence, Esq.,**
St. Croix, U.S.V.I.
  *For the Plaintiffs*

**Carol Thomas-Jacobs, Esq.,**
St. Croix, U.S.V.I.
  *For the Defendants*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on two separate "Complaint[s] and Emergency Application[s] for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Declaratory Relief," filed by Plaintiffs Paul Payne, Glendaly Felix, Tyrone Hendrickson, Anneth Evelyn, and Nancy Paulina (the "Voter Plaintiffs") on September 7, 2014 in Civil Action No. 14-cv-0053, and by Plaintiff Senator Alicia "Chucky" Hansen ("Senator Hansen") on September 8, 2014 in Civil Action No. 14-cv-0055 (collectively, "Plaintiffs").[1] Plaintiffs seek a "temporary, preliminary and permanent injunction" ordering Defendants Caroline Fawkes, as Supervisor of Elections for the Virgin Islands, and the Virgin Islands Joint Board of Elections ("Joint Board") to place Senator Hansen's name on the ballot for the upcoming November 4, 2014 general election. Plaintiffs' request for injunctive relief is grounded in a "Pardon of Alicia 'Chucky' Hansen" issued by John P. de Jongh, Jr., Governor of the Virgin Islands, on September 3, 2014, in which Governor de Jongh "pardon[ed] the convictions of Alicia 'Chucky' Hansen for the crimes of willful failure to file income tax returns . . . and restore[d] her civil rights in all respects." (Dkt. No. 5-6).[2]

---

[1] By Order entered on September 11, 2014, these two cases were consolidated for all purposes. (Dkt. No. 18). For ease of reference, the Court will cite to the docket numbers from the Voter Plaintiffs' case—Civil Action No. 14-cv-0053—only.

[2] As noted below, in an Opinion and Order entered on August 28, 2014, the Supreme Court of the Virgin Islands ordered that Senator Hansen's nomination papers for the November 4, 2014 general election be set aside, based on the Supreme Court's conclusion that Senator Hansen's 2008 convictions for willful failure to file income taxes constitute crimes "involving moral turpitude" within the meaning of Section 6(b) of the Revised Organic Act of 1954, 48 U.S.C. § 1572(b), thus "render[ing] her ineligible to serve in the 31st Legislature." (Dkt. Nos. 5-2 at 35 [Opinion], 5-3 [Order]) (*Bryan v. Fawkes*, S. Ct. Civ. No. 2014-0046, ___ V.I. ___, 2014 V.I. Supreme LEXIS 42 (V.I. Aug. 28, 2014)). The issue presented to the Supreme Court and that Court's ruling thereon are not before this Court. They are noted here by way of background only.

2

In addition to Plaintiffs' request for injunctive relief, Plaintiffs also seek declaratory relief. In this regard, Plaintiffs seek an Order from this Court declaring that "the Pardon issued by the Governor of the Virgin Islands to Senator Hansen is valid and removes any impediment to Senator Hansen running for re-election in this election cycle under Section 6(b) of the Revised Organic Act; or from serving as a current V.I. Senator; or from running for re-election in this and future elections based on the conviction at issue[.]" (Dkt. No. 1 at ¶ 8).

The Court heard oral argument on Plaintiffs' request for a Temporary Restraining Order ("TRO") on September 10, 2014.[3] The arguments presented by Defendants were in accord with those offered by Plaintiffs.[4] For the reasons set forth below, the Court will grant Plaintiffs' request for a TRO and issue an Order directing Defendant Fawkes and the Joint Board to place Senator Hansen's name on the ballot for the November 4, 2014 general election.

## I. BACKGROUND

In 2008, Senator Hansen was convicted of three misdemeanor counts of willful failure to file income tax returns under the Virgin Islands Code, 33 V.I.C. § 1524. (Dkt. No. 1 at ¶ 2; Dkt.

---

Before this Court on Plaintiffs' application for injunctive and declaratory relief is the effect of the *subsequent* pardon by Governor de Jongh on Senator Hansen's eligibility to be placed on the ballot for the upcoming election. That issue was not before the Supreme Court. (*See* Dkt. No. 5-2 at 4) ("Notably, to date, Hansen has not been pardoned for her convictions.").

[3] Because of the overlapping nature of the arguments, the parties' positions on issues bearing on Plaintiffs' request for declaratory relief were also heard at the TRO hearing and will be discussed herein.

[4] While the substantive positions of the parties were identical in virtually all material respects, the live controversy arose herein from Defendants' refusal to place Senator Hansen on the ballot without a Court Order granting such relief. As noted by Defendants' counsel, Defendants' position in this regard is grounded in the Supreme Court of the Virgin Islands' August 28, 2014 Opinion and Order and the resulting August 29, 2014 Order of the Superior Court of the Virgin Islands directing Defendant Fawkes to "set aside the nomination papers of Alicia 'Chucky' Hansen, and remove the name of Alicia 'Chucky' Hansen from the general election ballot." (Dkt. No. 5-5).

No. 5-2 at 3). Notwithstanding her convictions, Senator Hansen was certified as a candidate and was elected to serve in both the 29th and 30th Legislatures of the Virgin Islands in 2010 and 2012, respectively. (Dkt. No. 1 at ¶ 45).

In May 2014, Senator Hansen was again certified to be on the ballot—this time, for the November 4, 2014 general election. (*Id.* at ¶ 2). On May 14, 2014, Defendant Fawkes informed voter Adelbert M. Bryan ("Bryan"), who objected to Senator Hansen's certification, that Defendant Fawkes had examined Senator Hansen's nomination papers and determined that "she meets the qualifications established by law for public office as a senator." (*Id.* at ¶ 3). On May 19, 2014, Bryan filed a *pro se* petition in the Superior Court of the Virgin Islands alleging that Senator Hansen was "ineligible to hold public office and prohibited from being a member of the Virgin Islands Legislature" because her convictions for willful failure to file taxes constituted "crime[s] of moral turpitude" which disqualified her as a candidate under Section 6(b) of the Revised Organic Act, 48 U.S.C. § 1572(b). (*Id.* at ¶ 12). Following the Superior Court's dismissal of Bryan's petition, he appealed to the Supreme Court of the Virgin Islands. (*Id.* at ¶ 17).

On August 28, 2014, the Supreme Court found that Senator Hansen's convictions constituted crimes involving moral turpitude that rendered her ineligible to serve in the Legislature. (Dkt. No. 5-2 at 35–36). In reversing the Superior Court's Order, the Supreme Court directed the Superior Court, on remand, to grant Bryan's petition and "order the Supervisor of Elections to set aside the nomination papers of Alicia 'Chucky' Hansen." (Dkt. No. 5-4). Consequently, on August 29, 2014, the Superior Court ordered Defendant Fawkes, as Supervisor of Elections, to "set aside the nomination papers of Alicia 'Chucky' Hansen, and remove the name of Alicia 'Chucky' Hansen from the general election ballot." (Dkt. No. 5-5). By letter

dated September 2, 2014, Defendant Fawkes provided Senator Hansen with notice of her disqualification. (TRO Hearing Ex. 4).

On September 3, 2014, Governor de Jongh issued a pardon to Senator Hansen which states, in pertinent part:

> NOW, THEREFORE, by the powers vested in me by Section 11 of the Revised Organic Act of 1954, as amended, and for the aforementioned reasons, I, John P. de Jongh, Jr., Governor of the United States Virgin Islands, do hereby pardon the convictions of Alicia "Chucky" Hansen for the crimes of wil[l]ful failure to file income tax returns under V.I. Code Ann. tit. 33, § 1524 and restore her civil rights in all respects.

(Dkt. No. 5-6). Following the issuance of the pardon, Senator Hansen filed her nomination papers dated September 4, 2014. (Dkt. No. 5-1). However, notwithstanding the pardon, Defendants have refused to recognize Senator Hansen's eligibility to be placed on the ballot for the November 4, 2014 general election. (Dkt. 1 at ¶ 7). Consequently, Plaintiffs filed the instant actions arguing: that the Governor's pardon restored Senator Hansen's civil rights, which made her eligible to be a member of the Legislature under Section 6(b) of the Revised Organic Act; that Senator Hansen filed new, post-pardon nomination papers which served to cure her earlier disqualification; and that the Court should therefore issue an Order requiring Defendants Fawkes and the Joint Board to place Senator Hansen's name on the November 2014 general election ballot. (*Id.* at ¶ 8). Plaintiffs assert that by not putting Senator Hansen on the ballot, Defendants are not giving effect to Section 6(b) of the Revised Organic Act and have violated various constitutional provisions including the Due Process Clause, the Equal Protection Clause, and the First Amendment. (*Id.* at ¶¶ 1, 7, 25).

## II. APPLICABLE LEGAL PRINCIPLES

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331—federal question jurisdiction—because Plaintiffs allege that Defendants' refusal to put Senator

Hansen's name on the November 4, 2014 general election ballot violates the Revised Organic Act of 1954, 48 U.S.C. §§ 1541–1645, and the United States Constitution. *See Thorstenn v. Barnard*, 883 F.2d 217, 218 (3d Cir. 1989) ("Since plaintiffs asserted a violation of a federal statute, *viz.*, the Organic Act, the claims if brought in a United States District Court would have been cognizable under 28 U.S.C. § 1331. Subject matter jurisdiction in the district court for the Virgin Islands, therefore, existed pursuant to Section 22 of the Revised Organic Act of 1954[.]"); *Bell v. Pleasantville Hous. Auth.*, 443 F. App'x 731, 735 (3d Cir. 2011) (opining that district court had federal question subject matter jurisdiction over action on ground that plaintiff's claim arose under the Constitution). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343—jurisdiction over civil rights actions—because Plaintiffs have alleged that Defendants' actions have deprived them of their civil rights pursuant to 42 U.S.C. § 1983. *See Abulkhair v. Liberty Mut. Ins. Co.*, 441 F. App'x 927, 930 (3d Cir. 2011) (noting that when a plaintiff alleges a deprivation of his civil rights under 42 U.S.C. § 1983, jurisdiction exists "under 28 U.S.C. § 1331, the general federal question statute, and under 28 U.S.C. § 1343(a)(3), the jurisdictional counterpart to 42 U.S.C. § 1983.").

> With respect to Plaintiffs' request for a TRO, Plaintiffs must demonstrate:
>
> (1) a likelihood of success on the merits; (2) that [they] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 249–50 (3d Cir. 2011) (citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). If Plaintiffs are unable to establish that each element is in their favor, an injunction should not issue. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 2014 U.S. App. LEXIS 16426, at *11 (3d Cir. Aug. 26, 2014) (citing *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

6

## III. DISCUSSION

Plaintiffs request a TRO "directing Caroline F. Fawkes and the Joint Election Board to place Senator Alicia 'Chucky' Hansen on the upcoming election ballot[.]" (Dkt. No. 1 at ¶ 1). Not only did Defendants offer no opposition to the entry of a TRO, Defendants made essentially the same arguments as Plaintiffs and requested the same relief at the TRO hearing. As discussed below, the Court finds that Plaintiffs have made the necessary showing on each of the four factors for injunctive relief under Rule 65 and, accordingly, will enter a TRO.

### A. Likelihood of Success on the Merits

Plaintiffs present two statutory arguments for why they have a likelihood of success on the merits. First, they contend that Governor de Jongh's pardon cured Senator Hansen's initial, deficient nomination papers. Second, Plaintiffs assert that following the pardon, Senator Hansen filed new, valid nomination papers within the statutorily required three days provided to cure defective submissions. The Court rejects Plaintiffs' first argument, but agrees with Plaintiffs' second argument.

#### 1. Senator Hansen's May 2014 Nomination Papers

To address Plaintiffs' first argument, the Court must consider the effect and scope of the Governor's September 3, 2014 pardon of Senator Hansen. Plaintiffs argue that the Governor's pardon not only erased the legal effects of her conviction from the date of the pardon forward, but also reached back in time and served to make Senator Hansen's May 2014 nomination papers valid. Plaintiffs arrive at this conclusion based on their contention that the pardon power of the Governor is "broad and unlimited," unconstrained by the legislative or judicial branches, and that the Governor intended the pardon to cure Senator Hansen's initial, deficient nomination papers. In effect, Plaintiffs assert that the pardon applies retroactively.

The Revised Organic Act of 1954—originally passed by the U.S. Congress in 1936—"is 'the Virgin Islands' equivalent of a constitution.'" *Gov't of V.I. v. Rivera,* 333 F.3d 143, 145 (3d Cir. 2003) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993)). Among other things, the Revised Organic Act vests the Governor with the power to grant pardons. The statute provides, in pertinent part:

> The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of the Virgin Islands. *He may grant pardons and reprieves* and remit fines and forfeitures for any offenses against local laws.

48 U.S.C. § 1591 (emphasis added).

Contrary to Plaintiffs' assertions, the cases cited by Plaintiffs in their post-hearing brief do not—for the most part—support their position that pardons have retroactive effect.[5] Most of the cited cases stand for the undisputed propositions that a pardon restores to a person the full enjoyment of his or her civil rights that were lost as a result of the conviction, *see Wood v. Fitzgerald*, 3 Ore. 568, 575 (Ore. 1869); and that the deprivation or suspension of any of these civil rights, after pardon, is punishment, and would nullify the power of the pardon, *see Bjerkan v. United States*, 529 F.2d 125, 127 (7th Cir. 1975). Plaintiffs also cite a case where a state governor pardoned a citizen for a federal felony, thus restoring that person's civil rights so he could seek and hold municipal and state office. *See Malone v. Shyne*, 937 So. 2d 343, 356 (La. 2006).[6]

---

[5] When asked by the Court during the TRO hearing to identify case authority which supported their position that a pardon applies retroactively, Plaintiffs' counsel responded that she could not point to any at that time. At the Court's request, counsel submitted further briefing on the question of whether the Governor's pardon applied "retroactively" to Senator Hansen's May 2014 nomination papers. (Dkt. No. 13).

[6] The only case cited by Plaintiffs that overstates the power of a pardon is *United States v. McMurrey*, 827 F. Supp. 424 (S.D. Tex. 1993). The District Court in *McMurray* opined that the Governor's pardon of Mr. Stout "erases completely the conviction from his past. Pardons grant a

Indeed, Plaintiffs' contention that the pardon applies retroactively is contrary to a basic tenet that has been established for nearly a century and a half. In *Knote v. United States*, 10 Ct. Cl. 397 (1874), the Court of Claims explained that pardons restored a person's civil rights by removing "legal disabilities consequent on the crime." *Id.* at *5. The court noted that the removal of those disabilities "should preclude any *further* effect of the offense pardoned. But this is a different thing from giving the pardon a retroactive effect . . . ." *Id.* (emphasis added). In affirming this decision, the Supreme Court opined that while an offender is released "from all disabilities imposed by the offence," a pardon "does not make amends for the past. It affords no relief for what has been suffered by the offender in his person by imprisonment, forced labor or otherwise; it does not give compensation for what has been done or suffered, nor does it impose upon the government any obligation to give it.*" Knote v. United States*, 95 U.S. 149, 153–54 (1877); *see also Lettsome v. Waggoner,* 1986 WL 1267671, at *2 (V.I. Terr. Ct. July 25, 1986) (stating that pardons do not "restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.").

Similarly here, Governor de Jongh's September 2014 pardon did not serve to validate Senator Hansen's May 2014 nomination papers. A pardon "affords no relief" for the disabilities suffered by the offender prior to the issuance of the pardon—which, in this case was Senator

---

person the luxury of travelling back in time to a point before the arrest. For the pardoned crime, the slate is wiped clean." *Id.* at 425. The court was under the impression that "a pardon declares a person not guilty of a crime." *Id.* In *Lettsome v. Waggoner,* 1986 WL 1267671, at *3 (V.I. Terr. Ct. July 25, 1986), *aff'd*, 672 F. Supp. 858 (D.V.I. App. Div. 1987), the then-Territorial Court of the Virgin Islands, affirmed by the Appellate Division of this Court, rejected such broad language concerning the effect of a pardon. Quoting *Bjerkan v. United States*, 529 F.2d at 128 n.2, a case relied on by Plaintiffs in their post-hearing submission, the court pointed out that a pardon does not '"blot out guilt nor does it restore the offender to a state of innocence in the eyes of the law.'" *Id.* This Court does not subscribe to the scope of the pardon power as articulated in *McMurrey*, and finds the exposition in *Waggoner* more in line with modern jurisprudence on pardons.

Hansen's ineligibility in May 2014 to run for office. *See Knote*, 95 U.S. at 153. While a pardon affords many benefits, its issuance simply does not change the reality of the disabilities as they existed prior to the pardon.

Accordingly, the Court rejects Plaintiff's position that the Governor's September 3, 2014 pardon served to erase the disqualification she was under when she filed her first nomination papers in May 2014.

### 2.   Senator Hansen's September 2014 Nomination Papers

Plaintiffs also argue that the Governor's pardon removed the impediment to Senator Hansen's qualification—as a person having been convicted of a crime involving moral turpitude—thus rendering her eligible to be a member of the Legislature and further rendering her September 4, 2014 nomination papers—which were timely re-filed within the statutorily required three days—unobjectionable.[7] Based on the Court's reading of the relevant provisions of the Revised Organic Act and the Virgin Islands Code, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits based on this argument.

Section 6(b) of the Revised Organic Act provides, in pertinent part:

> No person shall be eligible to be a member of the legislature who is not a citizen of the United States, who has not attained the age of twenty-one years, who is not a qualified voter in the Virgin Islands, who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election, or *who has been convicted of a felony or of a crime involving moral turpitude and has not received a pardon restoring his civil rights.*

48 U.S.C. § 1572(b) (emphasis added). By its plain language, Section 6(b) of the Revised Organic Act provides that, if a person has been convicted of a felony or a crime involving moral

---

[7] The only official objection that was made to Senator Hansen's candidacy was contained in the September 2, 2014 letter from Defendant Fawkes to her, based on the fact that the Supreme Court had ruled that Senator Hansen had been convicted of a crime involving moral turpitude. (TRO Hearing Ex. 4).

turpitude, the only way that a person with that type of disqualification may be eligible to be a member of the legislature—and, as integral to the process, have his or her name placed on the election ballot—would be to receive a pardon restoring his or her civil rights. *See Douglass v. Convergent Outsourcing*, __ F.3d __, 2014 WL 4235570, at *2 (3d Cir. Aug. 28, 2014) ("'If the statute's plain language is unambiguous and expresses [Congress's] intent with sufficient precision, we need not look further.'") (quoting *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011)).

Governor de Jongh's September 3, 2014 pardon of Senator Hansen did just that, explicitly providing that it "restore[d] [Senator Hansen's] civil rights in all respects." (Dkt. No. 5-6). The pardon thereby removed the disqualification of Section 6(b) that would have prevented Senator Hansen from running as a candidate in the November 4, 2014 election. *Lettsome v. Waggoner*, 672 F. Supp. 858, 863 (D.V.I. App. Div. 1987) ("Modern cases have held that a pardon . . . restores a person's civil rights and eliminates the collateral consequences stemming from the loss of those civil rights."); *see also Castillo v. U.S. Att'y Gen.*, 756 F.3d 1268, 1274 (11th Cir. 2014) ("After *Ex parte Garland*, [71 U.S. (4 Wall.) 333 (1866)], in different contexts, courts have consistently observed that a full pardon bars all future punishment for the pardoned conviction.") (citing cases).[8]

---

[8] Plaintiffs have also sought "a declaration that the Pardon issued by the Governor of the Virgin Islands to Senator Hansen is valid and removes any impediment to Senator Hansen . . . serving as a *current* V.I. Senator." (Dkt. No. 1 at ¶ 8) (emphasis added). At the TRO hearing, this Court questioned whether this issue was ripe, given that the Legislature of the Virgin Islands has taken no action in this regard. Counsel for Plaintiffs asserted that there was a recent article in the newspaper reporting that "one of the Senators has called for a hearing on [Senator Hansen's] eligibility to now hold office based on the Supreme Court's opinion." The Court's very serious concerns about the ripeness of this issue were not assuaged by counsel's response. *See Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (observing that the ripeness doctrine seeks to "'determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential

However, the Court cannot resolve Plaintiffs' request for injunctive relief directing Defendants to place Senator Hansen on the ballot for the 2014 general election without considering the Virgin Islands Elections Code. The Elections Code requires the Supervisor of Elections, or her deputy, to "forthwith examine the nomination petitions, nomination papers or nomination certificates filed with [her] . . . and [to] permit them to be examined by any interested citizen." 18 V.I.C. § 411(a). If, in examining a nomination document, "the Supervisor determines that a candidate for election or nomination does not meet the qualifications established by law for the office, then [s]he shall disqualify such candidate and delete the candidate's name from the ballot if the ballots have not been printed." 18 V.I.C. § 411(b). The Elections Code further states:

> When a nomination [document] is found to be defective the candidate shall be notified immediately by special messenger with the reason or reasons therefor. If a new, valid petition, paper or certificate is not filed within three days thereafter the candidate shall be disqualified for nomination or election.

18 V.I.C. § 411(c).

Here, it is undisputed by the parties that Senator Hansen filed "new, valid . . . [nomination] paper[s] . . . within three days" of receiving notice of her disqualification from the Supervisor of Elections. (Dkt. No. 5-1). The question that arises is whether Section 411(c)'s grant of three days to cure a "defective" nomination document applies to a candidate who is missing one or more of the "qualifications established by law for the office," referenced in Section 411(b), including those qualifications set forth in Section 6(b) of the Revised Organic

---

requirements of the doctrine.'") (quoting *Peachlum v. City of York, Pa.*, 333 F.3d 429, 433 (3d Cir. 2003)); *see also Legislature of the V.I. v. Mapp*, 24 V.I. 304, 305 (D.V.I. 1989) (holding, in a case where the Legislature of the Virgin Islands requested—among other relief—a declaration that a sitting member was ineligible to continue serving under Section 6(b) of the Revised Organic Act, that "[b]ecause the legislature ha[d] not acted on the issue of Mr. Mapp's qualifications to continue as an incumbent, the court ha[d] no jurisdiction over the matter. Our jurisdiction . . . must always follow the action of the legislature itself, or its failure to act, which creates a violation of the Organic Act.").

Act. In other words, the Court must consider whether the failure to satisfy one or more of the qualifications renders a nomination document "defective" within the meaning of Section 411(c), and thus subject to cure. The Court notes that the term "defective" is left undefined in the Elections Code.

The parties present a unified argument that if a candidate is found to lack a qualification required by law under Section 411(b), the candidate's nomination documents are "defective" under Section 411(c), and the candidate must, therefore, be notified immediately and given three days to satisfy the qualification. Thus, the parties argue, Sections 411(b) and 411(c) must be read together.

Similarly, the Attorney General of the Virgin Islands, in an advisory letter to the Governor discussing the "[a]uthority and effect of Pardon" on Senator Hansen's eligibility to run for office, opined that "[o]nce granted a pardon . . . Senator Hansen may cure the defect in her nomination paper if resubmitted to the Supervisor within three (3) days of the Notice of Defect under Title 18 V.I.C. Sec. 411(c) . . . ." (Dkt. No. 5-10 at 4).

While not advanced by any of the parties, the contrary argument is that Section 411(b), which pertains to the failure to satisfy the qualifications established by law for holding office and *does not* contain language regarding the ability to cure, and Section 411(c), which pertains to "defective" nomination documents and *does* contain "cure" language, are separate and distinct.[9] Thus, it could be argued that, in the absence of "cure" language in Section 411(b), that provision should be interpreted to mean that one who fails to meet the qualifications established by law for

---

[9] The Court notes that subsection 411(b) was added by amendment in 1968 and that, prior to 1968, Section 411 was comprised only of what is now subsection 411(a) and what is now subsection 411(c). 1968 V.I. Sess. Laws 2253, § 2.

an office is not deemed to have a "defective" nomination document and thus is not afforded the opportunity to cure.

The Third Circuit has instructed that this Court, "when exercising jurisdiction over cases requiring the application of Virgin Islands law . . . , [is] required to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law, and should seek guidance from Superior Court decisions in undertaking this endeavor." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.3 (3d Cir. 2007). Thus, this Court may "look[] to decisions of the Superior Court as a datum for ascertaining [territorial] law," *id.* at 361 (internal quotation marks omitted), although this Court is "not . . . bound by Superior Court decisions" in arriving at its conclusions, *id.* at 362 n.2 (citing *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 199 (3d Cir. 2004)).

The Court is aware of one local case that is instructive on the issue of the proper interpretation of Section 411. In *Moorhead v. Government of the Virgin Islands*, a case involving the then-Supervisor of Elections' "11th hour" disqualification of a candidate because of an unpardoned criminal conviction rendering the candidate ineligible under Section 6(b) of the Revised Organic Act, the then-Territorial Court of the Virgin Islands squarely addressed this issue:

> Section 411 outlines the duties of defendant Todman in her capacity as Supervisor of Elections in regard to the examination of the nomination petitions, papers and certificates, and necessary action should any defects in said nomination material be present. It provides that if the Supervisor determines that a candidate for election or nomination does not meet the qualifications, then she shall disqualify such candidate and delete his name from the ballot if the ballots have not been printed. Section 411 also requires the Supervisor to notify a candidate immediately by special messenger if any of his nomination material is defective along with the reason or reasons for the defect. In view of the fact that plaintiff submitted his material in late August and he was not notified of any defects in said material until the 11th hour, it would appear that defendant Todman failed to timely inspect the nomination material and properly notify the plaintiff.

18 V.I. 237, 243 (V.I. Terr. Ct. 1982).[10] Accordingly, under the interpretation of Section 411 discussed in *Moorhead*, a finding under Section 411(b) that a "candidate for election or nomination does not meet the qualifications established by law for the office"—specifically, that he is not qualified because of an unpardoned criminal conviction rendering him ineligible under Section 6(b) of the Revised Organic Act—leads to an identical result as a finding under Section 411(c) that a nomination document is defective: immediate notification to the candidate of the problem with his or her nomination document and three days to cure. *See id.* This interpretation of the statutory language by the then-Territorial Court of the Virgin Islands—over thirty years ago—informs the Court's analysis of the issues presented.

The Court thus finds that, when a candidate is found to lack a qualification required by law for office under Section 411(b), the candidate must be notified immediately and afforded three days to cure by filing "a new, valid petition, paper or certificate," as required by Section 411(c). This interpretation is supported by the Territorial Court of the Virgin Islands in *Moorhead*, an opinion which, although not binding on this Court, provides "guidance" and "a datum for ascertaining [territorial] law." *Edwards*, 497 F.3d at 361–62.[11]

---

[10] Prior to October 29, 2004, the Superior Court of the Virgin Islands was named the Territorial Court of the Virgin Islands. *See* 2004 V.I. Sess. Laws 179.

[11] The Supreme Court of the Virgin Islands set aside Senator Hansen's nomination papers pursuant to Title 18 V.I.C. § 412, which is the statutory provision pursuant to which Bryan filed his challenge with the Superior Court. (Dkt. No. 5-2 at 5, 35). In his advisory letter to the Governor, the Attorney General of the Virgin Islands correctly noted that Section 412, "makes no reference to the three (3) days cure period," but opined that Section 412 "must be read with section 411(c)," and that when the two sections are read jointly, "there is good reason to conclude that Senator Hansen is eligible to be placed on the ballot once she has been granted a pardon with restoration of her civil rights." (Dkt. No. 5-10 at 4). The Territorial Court of the Virgin Islands in *Moorhead* similarly stated that "Section 412 must be read in conjunction with 18 V.I.C. § 411 which is referred to in the text of section 412." 18 V.I. at 243. This Court agrees, and further notes that Section 412 allows the Superior Court, "in its discretion, [to] permit amendments [to the nomination document] within such time . . . as the court may specify." 18

Accordingly, for the foregoing reasons, the Court finds that Plaintiffs have established a likelihood of success on the merits of their claim that, under the relevant statutory provisions, Senator Hansen's name should be placed on the ballot for the November 4, 2014 general election.[12]

**B.  Other TRO Factors**

Having determined that Plaintiffs have demonstrated a likelihood of success on the merits, the Court briefly considers the remaining factors for injunctive relief. First, Plaintiffs have demonstrated irreparable injury in that there is no adequate remedy at law for a qualified candidate whose name is improperly left off of an election ballot. *Accord Queens Cnty. Republican Comm. v. N.Y. State Bd. of Elections*, 222 F. Supp. 2d 341, 346 (E.D.N.Y. 2002) ("The plaintiffs have established irreparable injury. If Reich's name legitimately belongs on the ballot and it does not appear, then no monetary award will redress the injury to Reich or the Queens County Republican Committee.") (citation omitted). Further, given that Defendants' position is that Senator Hansen's name should be placed on the ballot, they will suffer no harm as the nonmoving party by the issuance of injunctive relief. Finally, with regard to the public interest, the Third Circuit has noted that, "'[i]f a plaintiff demonstrates both a likelihood of success on the merits and an irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.'" *Guardian Life Ins. Co. of Am. v. Estate of Cerniglia*, 446 F.

---

V.I.C. § 412.

[12] Because the Court finds that Plaintiffs are likely to succeed on the merits based on the relevant provisions of the Revised Organic Act and the Virgin Islands Elections Code, the Court need not reach Plaintiffs' constitutional arguments. *See Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997) ("'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.'" (quoting *Spector Motor Service* v. *McLaughlin*, 323 U.S. 101, 105 (1944)) (alteration in original).

App'x 453, 457 (3d Cir. 2011) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)). This case presents no exception as the public interest will be served by placing on the ballot the name of a candidate who meets the qualifications both for nomination and for holding office.

Accordingly, the Court finds that the remaining factors also favor the entry of a TRO under the circumstances here.

## V. CONCLUSION

For the foregoing reasons, the Court will enter a Temporary Restraining Order directing Defendants Caroline Fawkes, as Supervisor of Elections for the Virgin Islands, and the Joint Board of Elections, to place Senator Alicia "Chucky" Hansen's name on the ballot for the upcoming November 4, 2014 general election.[13]

The Temporary Restraining Order shall remain in effect up to and including September 26, 2014. In the absence of further written and/or submissions from the parties, the Court will base its decision regarding a Permanent Injunction and final declaratory relief on the filings currently before the Court and the arguments presented at the September 10, 2014 hearing. An appropriate Order accompanies this Memorandum Opinion.

Date: September 12, 2014 _____/s/_____
WILMA A. LEWIS
Chief Judge

---

[13] Rule 65(c) of the Federal Rules of Civil Procedure requires that a party moving for injunctive relief "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Third Circuit has noted that, "strict application of the security requirement may be inappropriate . . . in noncommercial cases, [where] the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." *Scanvec Amiable, Ltd. v. Chang*, 80 F. App'x 171, 175 (3d Cir. 2003) (citations omitted). Given that this is a non-commercial case in which Defendants join Plaintiffs in requesting the entry of a TRO, the Court finds that the balance of hardships favors Plaintiffs and, accordingly, waives the Rule 65(c) security requirement.