## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

_____
)
**PAUL PAYNE, GLENDALY FELIX,** )
**TYRONE HENDRICKSON, ANNETH** )
**EVELYN and NANCY PAULINA,** )
)
**Plaintiffs,** )
)
**v.** )                    **Civil Action No. 2014-053**
)
**CAROLINE FAWKES, in her Individual** )
**Capacity, and in her Capacity as Supervisor** )
**of Elections for the U.S.V.I., and the JOINT** )
**V.I. BOARD OF ELECTIONS,** )
)
**Defendants.** )
_____)
)
**SENATOR ALICIA "CHUCKY" HANSEN,** )
)
**Plaintiff,** )
)
**v.** )                    **Civil Action No. 2014-055**
)
**CAROLINE FAWKES, in her Individual** )
**Capacity, and in her Capacity as Supervisor** )
**of Elections for the U.S.V.I., and the JOINT** )
**V.I. BOARD OF ELECTIONS,** )
)
**Defendants.** )
_____)

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Rhea Lawrence, Esq.,**
St. Croix, U.S.V.I.
        *For the Plaintiffs*

**Carol Thomas-Jacobs, Esq.,**
St. Croix, U.S.V.I.
        *For the Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on requests for a permanent injunction and declaratory relief filed by Plaintiffs Paul Payne, Glendaly Felix, Tyrone Hendrickson, Anneth Evelyn, and Nancy Paulina (the "Voter Plaintiffs") on September 7, 2014, and by Plaintiff Senator Alicia "Chucky" Hansen ("Senator Hansen") on September 8, 2014 (collectively, "Plaintiffs").[1] Plaintiffs seek a permanent injunction directing Defendants Caroline Fawkes ("Defendant Fawkes"), as Supervisor of Elections for the Virgin Islands, and the Virgin Islands Joint Board of Elections ("Defendant Joint Board") to place Senator Hansen's name on the ballot for the upcoming November 4, 2014 general election. Plaintiffs base their request for injunctive relief on a "Pardon of Alicia 'Chucky' Hansen" issued by John P. de Jongh, Jr., Governor of the Virgin Islands, on September 3, 2014, in which Governor de Jongh "pardon[ed] the convictions of Alicia 'Chucky' Hansen for the crimes of wil[l]ful failure to file income tax returns . . . and restore[d] her civil rights in all respects." (Dkt. No. 5-6 at 2).[2]

---

[1] The Voter Plaintiffs' case is Civil Action No. 14-cv-0053 and Senator Hansen's case is Civil Action No. 14-cv-0055. By Order entered on September 11, 2014, these two cases were consolidated for all purposes. (Dkt. No. 18). For ease of reference, the Court will cite to the docket numbers from the Voter Plaintiffs' case—Civil Action No. 14-cv-0053—only.

[2] As noted below, by Opinion and Order entered on August 28, 2014, the Supreme Court of the Virgin Islands ordered that Senator Hansen's nomination papers for the November 4, 2014 general election be set aside and that her name be removed from the ballot, based on the Supreme Court's conclusion that Senator Hansen's 2008 convictions for willful failure to file income tax returns constitute crimes "involving moral turpitude" within the meaning of Section 6(b) of the Revised Organic Act of 1954, 48 U.S.C. § 1572(b), thus "render[ing] her ineligible to serve in the 31st Legislature." (Dkt. Nos. 5-2 at 35–36 [Opinion], 5-3 [Order]) (*Bryan v. Fawkes*, S. Ct. Civ. No. 2014-0046, ___ V.I. ___, 2014 V.I. Supreme LEXIS 42 (V.I. Aug. 28, 2014)). The issue presented to the Supreme Court and that Court's ruling thereon—which involved the circumstances that existed *before* Governor de Jongh's pardon of Senator Hansen—are not before this Court. They are noted here by way of background only. Before this Court, on Plaintiffs' requests for a permanent injunction and declaratory relief, is the effect of the

In addition to Plaintiffs' request for a permanent injunction, Plaintiffs also seek declaratory relief. In this latter regard, Plaintiffs seek an Order from this Court declaring that the Governor's pardon "removes any impediment" under Section 6(b) of the Revised Organic Act to Senator Hansen's eligibility to run for the office of Senator in the Legislature of the Virgin Islands, or to currently serve as a Senator in the Legislature, based on her 2008 convictions for willful failure to file income tax returns. (Dkt. No. 1 at ¶ 8).

For the reasons that follow, the Court will grant Plaintiffs' request for injunctive relief, and enter a permanent injunction directing Defendants to place Senator Hansen's name on the ballot for the upcoming November 4, 2014 general election. Further, the Court will grant Plaintiffs' request for declaratory relief, in part, and enter an Order stating that Governor de Jongh's September 3, 2014 pardon "removes any impediment" under Section 6(b) of the Revised Organic Act to Senator Hansen's eligibility to run for the office of Senator in the Legislature of the Virgin Islands, based on her 2008 tax convictions.

## I.    BACKGROUND

In 2008, Senator Hansen was convicted of three misdemeanor counts of willful failure to file income tax returns under the Virgin Islands Code, 33 V.I.C. § 1524. (Dkt. No. 1 at ¶ 2; Dkt. No. 5-2 at 3). Notwithstanding her convictions, Senator Hansen was certified as a candidate and was elected to serve in both the 29th and 30th Legislatures of the Virgin Islands in 2010 and 2012, respectively. (Dkt. No. 1 at ¶ 45).

In May 2014, Senator Hansen was again certified to be on the ballot—this time, for the upcoming November 4, 2014 general election. (*Id.* at ¶¶ 2–3). On May 14, 2014, Defendant

---

*subsequent* pardon by Governor de Jongh on Senator Hansen's eligibility to run for, and serve in, the 31st Legislature, and—as integral to the process—to have her name placed on the ballot for the general election. That issue was not before the Supreme Court in its August 28 ruling. (*See* Dkt. No. 5-2 at 4) ("Notably, to date, Hansen has not been pardoned for her convictions.").

Fawkes informed voter Adelbert M. Bryan ("Bryan"), who objected to Senator Hansen's certification, that Defendant Fawkes had examined Senator Hansen's nomination papers and determined that "she meets the qualifications established by law for public office as a senator." (*Id.* at ¶ 3). On May 19, 2014, Bryan filed a petition in the Superior Court of the Virgin Islands alleging that Senator Hansen was "ineligible to hold public office and prohibited from being a member of the Virgin Islands Legislature" because her convictions for willful failure to file taxes constituted "crime[s] of moral turpitude" which disqualified her as a candidate under Section 6(b) of the Revised Organic Act, 48 U.S.C. § 1572(b). (*Id.* at ¶ 12). Following the Superior Court's dismissal of Bryan's petition, he appealed to the Supreme Court of the Virgin Islands. (*Id.* at ¶ 17).

In an Opinion entered on August 28, 2014, the Supreme Court found that Senator Hansen's convictions constitute crimes involving moral turpitude "that render[ed] her ineligible to serve in the 31st Legislature," and that Senator Hansen should be "remove[d] . . . from the general election ballot." (Dkt. No. 5-2 at 35–36). In its Order reversing the Superior Court's decision, the Supreme Court directed the Superior Court to "order the Supervisor of Elections to set aside the nomination papers of Alicia 'Chucky' Hansen." (Dkt. No. 5-3 at 3). Consequently, on August 29, 2014, the Superior Court ordered Defendant Fawkes, as Supervisor of Elections, to "set aside the nomination papers of Alicia 'Chucky' Hansen, and remove the name of Alicia 'Chucky' Hansen from the general election ballot." (Dkt. No. 5-5 at 2). By letter dated September 2, 2014, Defendant Fawkes provided Senator Hansen with notice of her disqualification. (Temporary Restraining Order Hearing Ex. 4).

On September 3, 2014, Governor de Jongh issued a pardon to Senator Hansen which states, in pertinent part:

> NOW, THEREFORE, by the powers vested in me by Section 11 of the Revised
> Organic Act of 1954, as amended, and for the aforementioned reasons, I, John P.
> de Jongh, Jr., Governor of the United States Virgin Islands, do hereby pardon the
> convictions of Alicia "Chucky" Hansen for the crimes of wil[l]ful failure to file
> income tax returns under V.I. Code Ann. tit. 33, § 1524 and restore her civil rights
> in all respects.

(Dkt. No. 5-6 at 2). On September 4, 2014, following the issuance of the pardon, Senator Hansen filed new nomination papers. (Dkt. No. 5-1). However, notwithstanding the pardon, and her subsequently filed nomination papers, Defendants refused to recognize Senator Hansen's eligibility to be placed on the ballot for the November 4, 2014 general election. (Dkt. 1 at ¶ 7).

Plaintiffs then filed the instant actions arguing that: (1) the Governor's pardon restored Senator Hansen's civil rights, which made her eligible to be a member of the Legislature under Section 6(b) of the Revised Organic Act; (2) the Governor's pardon operated retroactively to cure Senator Hansen's deficient May 2014 nomination papers; (3) Senator Hansen's September 2014 nomination papers were valid because they cured the defect in her May 2014 nomination papers; and (4) the Court should therefore issue an Order requiring Defendants Fawkes and the Joint Board to place Senator Hansen's name on the November 4, 2014 general election ballot. (*Id.* at ¶¶ 1, 6, 8). Plaintiffs assert that, by not putting Senator Hansen on the ballot, Defendants failed to give effect to Section 6(b) of the Revised Organic Act and violated various constitutional provisions including the Due Process Clause, the Equal Protection Clause, and the First Amendment. (*Id.* at ¶¶ 1, 7, 25).

The Court heard oral argument on Plaintiffs' request for a Temporary Restraining Order ("TRO") on September 10, 2014.[3] The arguments presented by Defendants were in accord with

---

[3] Because of the overlapping nature of the arguments, the parties' positions on issues bearing on Plaintiffs' request for declaratory relief were also heard at the TRO hearing.

5

those offered by Plaintiffs.[4] By Memorandum Opinion and Order issued on September 12, 2014, the Court entered a TRO directing Defendants Fawkes and the Joint Board to place Senator Hansen's name on the ballot for the November 4, 2014 general election. (Dkt. Nos. 20 [TRO], 21 [TRO Opinion]). Pursuant to Federal Rule of Civil Procedure 65(b), the TRO was entered for fourteen days, to remain in effect through September 26, 2014. (Dkt. No. 20 at 1).

In its September 12 Order, the Court also directed the parties to inform the Court by written notice filed by 5:00 p.m. that same day "whether they request[ed] the opportunity for additional briefing and/or oral argument in this matter." (*Id.*). The Court further advised that, "in the absence of further written and/or oral submissions from the parties, the Court [would] base its decision regarding a Permanent Injunction and final declaratory relief on the filings currently before the Court and the arguments presented at the [TRO] hearing." (*Id.*). The parties filed timely submissions advising the Court that no additional briefing or oral argument was necessary.  (Dkt. Nos. 22, 23). Presently before the Court, therefore, are Plaintiffs' requests for a permanent injunction and declaratory relief.

## I.      JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331—federal question jurisdiction—because Plaintiffs allege that Defendants' refusal to put Senator Hansen's name on the November 4, 2014 general election ballot violates the Revised Organic Act of 1954, 48 U.S.C. §§ 1541–1645, and the United States Constitution. *See Thorstenn v.*

---

[4] While the substantive positions of the parties are identical in virtually all material respects, the live controversy arises herein from Defendants' refusal to place Senator Hansen's name on the ballot without a Court Order granting such relief. As noted by Defendants' counsel, Defendants' position in this regard is grounded in the Supreme Court of the Virgin Islands' August 28, 2014 Opinion and Order and the resulting August 29, 2014 Order of the Superior Court of the Virgin Islands directing Defendant Fawkes to "set aside the nomination papers of Alicia 'Chucky' Hansen, and remove the name of Alicia 'Chucky' Hansen from the general election ballot." (Dkt. No. 5-5 at 2).

*Barnard*, 883 F.2d 217, 218 (3d Cir. 1989) ("Since plaintiffs asserted a violation of a federal statute, *viz.*, the Organic Act, the claims if brought in a United States District Court would have been cognizable under 28 U.S.C. § 1331. Subject matter jurisdiction in the district court for the Virgin Islands, therefore, existed pursuant to Section 22 of the Revised Organic Act of 1954[.]"); *Bell v. Pleasantville Hous. Auth*., 443 F. App'x 731, 735 (3d Cir. 2011) (opining that district court had federal question subject matter jurisdiction over action on ground that plaintiff's claim arose under the Constitution). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343—jurisdiction over civil rights actions—because Plaintiffs have alleged that Defendants' actions have deprived them of their civil rights pursuant to 42 U.S.C. § 1983. *See Abulkhair v. Liberty Mut. Ins. Co.*, 441 F. App'x 927, 930 (3d Cir. 2011) (noting that when a plaintiff alleges a deprivation of his civil rights under 42 U.S.C. § 1983, jurisdiction exists "under 28 U.S.C. § 1331, the general federal question statute, and under 28 U.S.C. § 1343(a)(3), the jurisdictional counterpart to 42 U.S.C. § 1983."); *see also McCauley v. University of the V.I.*, 618 F.3d 232, 240–41 (3d Cir. 2010) (noting that plaintiffs can bring suit for prospective injunctive relief under 42 U.S.C. § 1983 against officials of the Government of the Virgin Islands acting in their official capacities) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993)).

## II.    PERMANENT INJUNCTIVE RELIEF

Plaintiffs request a permanent injunction "directing Caroline F. Fawkes and the Joint Election Board to place Senator Alicia 'Chucky' Hansen on the upcoming election ballot[.]" (Dkt. No. 1 at ¶ 1).

An analysis of a motion for permanent injunctive relief considers whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably

injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) (citing *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 nn.2–3 (3d Cir. 1996)). The Third Circuit has noted that "a party seeking a permanent injunction must 'succeed on the merits.'" *In re Diet Drugs*, 369 F.3d 293, 307 n.7 (3d Cir. 2004) (quoting *Temple Univ. v. White*, 941 F.2d 201, 215 (3d Cir. 1991)); *see also Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 850 (3d Cir. 1984) ("In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy.") (citing *Evans v. Buchanan*, 555 F.2d 373 (3d Cir. 1977)).

As discussed below, the Court finds that Plaintiffs have made the necessary showing on each of the four factors for permanent injunctive relief. Accordingly, the Court will enter a permanent injunction directing Defendants Caroline Fawkes and the Joint Board of Elections to place Senator Hansen's name on the ballot for the upcoming November 4, 2014 general election.

## A.      Success on the Merits

Plaintiffs present two statutory arguments for why they should succeed on the merits of their claims. These arguments require interpretations of both federal and local Virgin Islands law.

First, Plaintiffs contend that Governor de Jongh's pardon—issued pursuant to the federal Revised Organic Act—operated retroactively to cure Senator Hansen's initial, deficient nomination papers filed in May 2014. Second, Plaintiffs assert that, because the pardon removed the impediment to Senator Hansen's eligibility to be a member of the Legislature of the Virgin Islands, and she filed new, valid nomination papers in September 2014—within three days of

receiving her notice of disqualification, as required by the Virgin Islands Elections Code—Senator Hansen successfully cured her defective nomination papers and, thus, her name must be placed on the ballot for the November 4, 2014 general election. The Court rejects Plaintiffs' first argument, but agrees with Plaintiffs' second argument.

### 1.    The Revised Organic Act

To address Plaintiffs' statutory arguments, the Court must first consider the effect and scope of the Governor's September 3, 2014 pardon of Senator Hansen, which was issued pursuant to the Revised Organic Act. *See Thorstenn*, 883 F.2d at 218. The Revised Organic Act of 1954—originally passed by the U.S. Congress in 1936—"is 'the Virgin Islands' equivalent of a constitution.'" *Gov't of V.I. v. Rivera,* 333 F.3d 143, 145 (3d Cir. 2003) (quoting *Brow*, 994 F.2d at 1032). Among other things, the Revised Organic Act vests the Governor with the power to grant pardons. The statute provides, in pertinent part:

> The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of the Virgin Islands. *He may grant pardons and reprieves* and remit fines and forfeitures for offenses against local laws.

48 U.S.C. § 1591 (emphasis added).

### a.    Senator Hansen's May 2014 Nomination Papers

Plaintiffs argue that the Governor's pardon not only erased the legal effects of Senator Hansen's convictions from the date of the pardon forward, but also reached back in time and served to make her May 2014 nomination papers valid. Plaintiffs arrive at this conclusion based on their contention that the pardon power of the Governor is "broad and unlimited," unconstrained by the legislative or judicial branches, and that the Governor intended the pardon to cure Senator Hansen's initial, deficient nomination papers. In effect, Plaintiffs assert that the pardon applies retroactively.

Contrary to Plaintiffs' assertions, the cases cited by Plaintiffs in their post-hearing brief do not—for the most part—support their position that pardons have retroactive effect.[5] Most of the cited cases stand for the undisputed propositions that a pardon restores to a person the full enjoyment of his or her civil rights that were lost as a result of the conviction, *see Wood v. Fitzgerald*, 3 Ore. 568, 575 (Ore. 1869), and that the deprivation or suspension of any of these civil rights, after pardon, is punishment, and would nullify the power of the pardon, *see Bjerkan v. United States*, 529 F.2d 125, 127 (7th Cir. 1975). Plaintiffs also cited two cases where the governors' pardons restored candidates' rights to run for office in upcoming elections. *See Malone v. Shyne*, 937 So. 2d 343, 356 (La. 2006); *Arnett v. Stumbo*, 153 S.W.2d 889 (Ky. 1941).[6]

Similarly, the cases on which Defendants relied during the TRO hearing and in their post-hearing brief offer no support to the proposition that pardons have retroactive effect. For example, in *Lopez v. Kase*, which Defendants discussed at the hearing, the Supreme Court of

---

[5] When asked by the Court during the TRO hearing to identify case authority which supported their position that a pardon applies retroactively, Plaintiffs' counsel responded that she could not do so at that time. At the Court's request, counsel submitted post-hearing briefing on several issues, including the question of whether the Governor's pardon applied "retroactively" to Senator Hansen's May 2014 nomination papers. (Dkt. No. 13).

[6] The only case cited by Plaintiffs that arguably supports their position is *United States v. McMurrey*, 827 F. Supp. 424 (S.D. Tex. 1993). The District Court in *McMurray* opined that the Governor's pardon of Mr. Stout "erases completely the conviction from his past. Pardons grant a person the luxury of travelling back in time to a point before the arrest. For the pardoned crime, the slate is wiped clean." *Id.* at 425. The court was under the impression that "a pardon declares a person not guilty of a crime." *Id.* In *Lettsome v. Waggoner,* 1986 WL 1267671, at *3 (V.I. Terr. Ct. July 25, 1986), *aff'd*, 672 F. Supp. 858 (D.V.I. App. Div. 1987), the then-Territorial Court of the Virgin Islands, affirmed by the Appellate Division of this Court, rejected such broad language concerning the effect of a pardon. Quoting *Bjerkan v. United States*, 529 F.2d at 128 n.2, a case relied on by Plaintiffs in their post-hearing submission, the court pointed out that a pardon does not "'blot out guilt nor does it restore the offender to a state of innocence in the eyes of the law.'" *Id.* This Court does not subscribe to the scope of the pardon power as articulated in *McMurrey*, and finds the exposition in *Waggoner* more in line with well-established jurisprudence on pardons.

New Mexico held that the Governor of New Mexico's pardon of an election-winner's prior felony conviction—after she won the election, but before the date she was to assume office—was effective to restore her full rights to assume the office. 126 N.M. 733 (N.M. 1999). Although the district attorney argued in *Lopez* that the election-winner could not assume office after receiving the pardon because she had not been eligible to vote at the time of the election—as a result of her then-unpardoned felony conviction—the court based its holding on the fact that the applicable provision of the New Mexico Constitution "does not specify a time period before taking office by which an elected official must be qualified to vote." *Id.* at 736. Accordingly, the *Lopez* court's application of the effect of the pardon was not retroactive to the election-winner's right to vote at the time of the election. Rather, the court found that her right to vote was restored the day she was pardoned, and that she was therefore eligible to assume office on a later date, because there was no specified time period before taking office by which an elected official was required to be qualified to vote. Thus, neither *Lopez*, nor the other cases upon which Defendants rely, support the proposition that Governor de Jongh's September 2014 pardon retroactively validated Senator Hansen's May 2014 nomination papers.[7]

Indeed, Plaintiffs' contention that the pardon applies retroactively is contrary to a basic tenet that has been established for nearly a century and a half. In *Knote v. United States*, 10 Ct. Cl. 397 (1874), the Court of Claims explained that pardons restored a person's civil rights by removing "legal disabilities consequent on the crime." *Id.* at 5. The court noted that the removal

---

[7] *See Alabama ex rel. Sokira v. Burr*, 580 So. 2d 1340 (Ala. 1991) (sitting mayor permitted to continue holding office by virtue of pardon twenty-four years earlier); *Brezizecki v. Gregorio*, 588 A.2d 453 (N.J. Super. 1990) (pardon restored candidate's right to run for office in upcoming election); *Illinois ex rel. Symonds v. Gualano*, 124 Ill. App. 2d 208 (Ill. App. 1970) (pardon issued before public office holder was ousted from office restored his right to hold office); *Hogan v. Hartwell*, 7 So. 2d 889 (Ala. 1942) (pardon restored candidate's right to run for office in upcoming election).

of those disabilities "should preclude any *further* effect of the offense pardoned. But this is a different thing from giving the pardon a retroactive effect . . . ." *Id.* (emphasis added). In affirming this decision, the United States Supreme Court opined that while an offender is released "from all disabilities imposed by the offence," a pardon "does not make amends for the past. It affords no relief for what has been suffered by the offender in his person by imprisonment, forced labor or otherwise; it does not give compensation for what has been done or suffered, nor does it impose upon the government any obligation to give it." *Knote v. United States*, 95 U.S. 149, 153–54 (1877); *see also Lettsome v. Waggoner,* 1986 WL 1267671, at \*2 (V.I. Terr. Ct. July 25, 1986) (stating that pardons do not "restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.").

Similarly here, Governor de Jongh's September 2014 pardon did not serve to validate Senator Hansen's May 2014 nomination papers. A pardon "affords no relief" for the disabilities suffered by the offender prior to the issuance of the pardon—which, in this case was Senator Hansen's ineligibility in May 2014 to run for office. *See Knote*, 95 U.S. at 153. While a pardon affords many benefits, its issuance simply does not change the reality of the disabilities as they existed prior to the pardon. Accordingly, the Court rejects Plaintiff's position that the Governor's September 3, 2014 pardon served to erase the disqualification she was under as of the date when she filed her first nomination papers in May 2014.

b.      **Senator Hansen's September 2014 Nomination Papers**

While rejecting a retroactive application of the pardon, the Court finds that the pardon removed the impediment to Senator Hansen's eligibility to be a member of the Legislature—as a person having been convicted of crimes involving moral turpitude—from the date of the pardon forward. Section 6(b) of the Revised Organic Act provides, in pertinent part:

12

> No person shall be eligible to be a member of the legislature who is not a citizen of the United States, who has not attained the age of twenty-one years, who is not a qualified voter in the Virgin Islands, who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election, or *who has been convicted of a felony or of a crime involving moral turpitude and has not received a pardon restoring his civil rights.*

48 U.S.C. § 1572(b) (emphasis added). By its plain language, Section 6(b) of the Revised Organic Act provides that, if a person has been convicted of a felony or a crime involving moral turpitude, the only way that a person with that type of disqualification would be eligible to be a member of the Legislature—and as integral to the process, have his or her name placed on the election ballot—would be to receive a pardon restoring his or her civil rights. *See Douglass v. Convergent Outsourcing*, __ F.3d __, 2014 WL 4235570, at *2 (3d Cir. Aug. 28, 2014) ("'If the statute's plain language is unambiguous and expresses [Congress's] intent with sufficient precision, we need not look further.'") (quoting *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011) (alteration in original)).

Governor de Jongh's September 3, 2014 pardon of Senator Hansen did just that, explicitly providing that it "restore[d] [Senator Hansen's] civil rights in all respects." (Dkt. No. 5-6 at 2). The pardon thereby removed the impediment under Section 6(b) of the Revised Organic Act that would have rendered Senator Hansen ineligible to be a member of the Legislature of the Virgin Islands. *Lettsome v. Waggoner*, 672 F. Supp. 858, 863 (D.V.I. App. Div. 1987) ("Modern cases have held that a pardon . . . restores a person's civil rights and eliminates the collateral consequences stemming from the loss of those civil rights."); *see also Castillo v. U.S. Att'y Gen.*, 756 F.3d 1268, 1274 (11th Cir. 2014) ("After *Ex parte Garland*, [71 U.S. (4 Wall.) 333 (1866)], in different contexts, courts have consistently observed that a full pardon bars all future punishment for the pardoned conviction.") (citing cases). The same law pursuant to which Senator Hansen was rendered ineligible because of her convictions of crimes

involving moral turpitude rendered her eligible as of September 3, 2014 by virtue of the Governor's pardon. 48 U.S.C. § 1572(b) ("No person shall be eligible to be a member of the legislature who . . . has been convicted of a felony or of a crime involving moral turpitude *and has not received a pardon restoring his civil rights*.") (emphasis added).

In view of the foregoing, the Court finds that, as of the issuance of Governor de Jongh's pardon on September 3, 2014, Senator Hansen's convictions for willful failure to file income tax returns no longer rendered her ineligible—or otherwise posed any barrier to her eligibility under Section 6(b) of the Revised Organic Act—to be a member in the 31st Legislature of the Virgin Islands. Accordingly, when Senator Hansen filed her nomination papers on September 4, 2014, she was eligible to serve as a Senator under Section 6(b).

### 2.    The Virgin Islands Elections Code

In addition to addressing the federal issue presented here—Senator Hansen's post-pardon eligibility to be a member of the Legislature of the Virgin Islands—the Court cannot resolve Plaintiffs' request for injunctive relief directing Defendants to place Senator Hansen on the ballot for the 2014 general election without considering the Virgin Islands Elections Code. Plaintiffs argue that, because the Governor's pardon rendered Senator Hansen eligible to be a member of the Legislature, her September 4, 2014 nomination papers—which were timely filed within the statutorily required three days of receiving her notice of disqualification—were valid under local Virgin Islands law.[8] Based on the Court's reading of the relevant provisions of the Virgin Islands

---

[8] The only official objection that was made to Senator Hansen's candidacy—which was contained in the September 2, 2014 letter from Defendant Fawkes to Senator Hansen—was that Senator Hansen was disqualified based on the Supreme Court ruling that she had been convicted of crimes involving moral turpitude. (TRO Hearing Ex. 4).

Code—together with the foregoing provisions of the Revised Organic Act with which they must be in harmony[9]—the Court agrees.

### a.    Title 18 V.I.C. § 411

The Elections Code requires the Supervisor of Elections, or her deputy, to "forthwith examine the nomination petitions, nomination papers or nomination certificates filed with [her] . . . and [to] permit them to be examined by any interested citizen." 18 V.I.C. § 411(a). If, in examining a nomination document,[10] "the Supervisor determines that a candidate for election or nomination does not meet the qualifications established by law for the office, then [s]he shall disqualify such candidate and delete the candidate's name from the ballot if the ballots have not been printed." 18 V.I.C. § 411(b). The Elections Code further states:

> When a nomination petition, nomination paper or nomination certificate is found to be defective the candidate shall be notified immediately by special messenger with the reason or reasons therefor. If a new, valid petition, paper or certificate is not filed within three days thereafter the candidate shall be disqualified for nomination or election.

18 V.I.C. § 411(c).

Here, it is undisputed that Senator Hansen filed "new, valid . . . [nomination] paper[s] . . . within three days" of receiving notice of her disqualification from the Supervisor of Elections. (Dkt. No. 5-1).[11] The question that arises is whether Section 411(c)'s grant of three days to cure

---

[9] Pursuant to the Revised Organic Act, the Legislature of the Virgin Islands is vested with the power "when within its jurisdiction and not inconsistent with the other provisions of [the Revised Organic Act] . . . to enact . . . laws not inconsistent with any law of the United States applicable to the Virgin Islands . . . ." 48 U.S.C. § 1574(c).

[10] For ease of reference, the Court will use the term "nomination document" to refer to the "nomination petitions, nomination papers or nomination certificates" referred to in Section 411.

[11] As previously noted, Senator Hansen was initially certified by the Supervisor of Elections as eligible to be placed on the ballot for the November 2014 election. In accordance with the Supreme Court of the Virgin Islands' ruling, the Supervisor of Elections notified Senator Hansen

"defective" nomination papers applies to a candidate who is missing one or more of the "qualifications established by law for the office," referenced in Section 411(b), including those qualifications set forth in Section 6(b) of the Revised Organic Act. In other words, the Court must consider whether the failure to satisfy one or more of the qualifications renders a nomination document "defective" within the meaning of Section 411(c), and thus subject to cure. The Court notes that the term "defective" is left undefined in the Elections Code.

The parties present a unified argument that if a candidate is found to lack a qualification required by law under Section 411(b), the candidate's nomination document is "defective" under Section 411(c), and the candidate must, therefore, be notified immediately and given three days to satisfy the qualification. Thus, the parties argue, Sections 411(b) and 411(c) are not exclusive, but must be read together.

Similarly, the Attorney General of the Virgin Islands, in an advisory letter to the Governor discussing the "[a]uthority and effect of Pardon" on Senator Hansen's eligibility to run for office, opined that "[o]nce granted a pardon . . . Senator Hansen may cure the defect in her nomination paper if resubmitted to the Supervisor within three (3) days of the Notice of Defect under Title 18 V.I.C. Sec. 411(c) . . . ." (Dkt. No. 5-10 at 4).

While not advanced by any of the parties, the contrary argument is that Section 411(b), which pertains to the failure to satisfy the qualifications established by law for holding office and *does not* contain language regarding the ability to cure, and Section 411(c), which pertains to

---

that she had been disqualified. Following the Governor's issuance of a pardon, Senator Hansen filed nomination papers that were valid because the impediment of her convictions for crimes involving moral turpitude had been removed. The Supervisor of Elections then refused to accept the new nomination papers in view of the existing Supreme and Superior Court Orders directing her to set aside Senator Hansen's nomination papers and remove her name from the ballot.

"defective" nomination documents and *does* contain "cure" language, are separate and distinct.[12]

Thus, it could be argued that, in the absence of "cure" language in Section 411(b), that provision

should be interpreted to mean that one who fails to meet the qualifications established by law for

an office is not deemed to have a "defective" nomination document and thus is not afforded the

opportunity to cure.[13]

The Third Circuit has instructed that this Court, "when exercising jurisdiction over cases

requiring the application of Virgin Islands law . . . , [is] required to predict how the Supreme

Court of the Virgin Islands would decide an issue of territorial law, and should seek guidance

from Superior Court decisions in undertaking this endeavor." *Edwards v. HOVENSA, LLC*, 497

F.3d 355, 362 n.3 (3d Cir. 2007). Thus, this Court may "look[] to the decisions of the Superior

Court as a datum for ascertaining [territorial] law," *id.* at 361 (internal quotation marks omitted),

although this Court is "not . . . bound by Superior Court decisions" in arriving at its conclusions,

*id.* at 362 n.3 (citing *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 199 (3d Cir. 2004)).

The Court is aware of one local case—*Moorhead v. Government of the Virgin Islands*—

that is instructive on the issue of the proper interpretation of Section 411 as it pertains to the

interplay between Sections 411(b) and 411(c). 18 V.I. 237 (V.I. Terr. Ct. 1982). In *Moorhead*, a

case involving the then-Supervisor of Elections' "11th hour" disqualification of a candidate

because of an unpardoned criminal conviction rendering the candidate ineligible under Section

---

[12] Because the parties are essentially in agreement in their respective positions on the substantive issues presented, the Court will posit and probe potential contrary arguments.

[13] The Court notes that subsection 411(b) was added by amendment in 1968 and that, prior to 1968, Section 411 was comprised only of what is now subsection 411(a) and what is now subsection 411(c). 1968 V.I. Sess. Laws 76 (Act. No. 2253, § 2). In light of its subsequent enactment, the absence of cure language in subsection 411(b) could be used to advance an argument against the opportunity to cure, while the placement of subsection 411(b) within the section that addresses defects and the ability to cure defects could be used to advance an argument in favor of the opportunity to cure.

6(b) of the Revised Organic Act, the then-Territorial Court of the Virgin Islands[14] squarely addressed this issue:

> Section 411 outlines the duties of defendant Todman in her capacity as Supervisor of Elections in regard to the examination of the nomination petitions, papers and certificates, and necessary action should any defects in said nomination material be present. It provides that if the Supervisor determines that a candidate for election or nomination does not meet the qualifications, then she shall disqualify such candidate and delete his name from the ballot if the ballots have not been printed. Section 411 also requires the Supervisor to notify a candidate immediately by special messenger if any of his nomination material is defective along with the reason or reasons for the defect. In view of the fact that plaintiff submitted his material in late August and he was not notified of any defects in said material until the 11th hour, it would appear that defendant Todman failed to timely inspect the nomination material and properly notify the plaintiff.

18 V.I. 237, 243–44 (V.I. Terr. Ct. 1982). The court in *Moorhead* further referred to the candidate's unpardoned criminal conviction as a "defect in [the candidate's] nomination material," and stated that "notification [of the candidate's failure to meet the qualifications for office] minutes before the 'casting of ballots' most assuredly is not adequate as it would effectively preclude a candidate from having an opportunity to correct, if possible, any defects in his nomination material." *Id.* at 244 n.14.

Accordingly, under the interpretation of Section 411 discussed in *Moorhead*, a finding under Section 411(b) that a "candidate for election or nomination does not meet the qualifications established by law for the office"—including that he is not qualified because of an unpardoned criminal conviction rendering him ineligible under Section 6(b) of the Revised Organic Act—leads to an identical result as a finding under Section 411(c) that a nomination document is defective: immediate notification to the candidate of the problem with his or her nomination document and three days to cure. *See id.* A qualification not met by the candidate in *Moorhead* was considered to be a "defect" in the nomination materials within the meaning of

---

[14] Prior to October 29, 2004, the Superior Court of the Virgin Islands was named the Territorial Court of the Virgin Islands. *See* 2004 V.I. Sess. Laws 179 (Act. No. 6687, §1(b)).

Section 411(c). This interpretation of the statutory language by the then-Territorial Court of the Virgin Islands—over thirty years ago—helps to inform the Court's analysis of the issues presented.

The *Moorhead* Court's interpretation of Section 411 finds support in the common definitions of the term "defective" and its root word, "defect." As noted, the term "defective" is not defined in the Virgin Islands Elections Code. The root word, "defect," is also undefined. "The Legislature [of the Virgin Islands] has instructed . . . that in the absence of a statutory definition, '[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language.'" *Connor v. People of the Virgin Islands*, 59 V.I. 286, 296 n.8 (V.I. 2013) (quoting 1 V.I.C. § 42, and citing THOMAS JEFFERSON, THE JEFFERSONIAN CYCLOPEDIA 482 (John P. Foley ed., Funk & Wagnalls Co. 1900) ("Laws are made for [people] of ordinary understanding and should, therefore, be construed by the ordinary rules of common sense. Their meaning is not to be sought for in metaphysical subtleties which may make anything mean everything or nothing at pleasure.") (alteration in original)).[15]

The Merriam-Webster Dictionary defines the term "defective" as "imperfect in form or function," and defines the term "defect" as "an imperfection that impairs worth or utility" and "a lack of something necessary for completeness, adequacy, or perfection." MERRIAM-WEBSTER'S

---

[15] The Legislature of the Virgin Islands further instructs that "'[t]echnical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning.'" 1 V.I.C. § 42. In this regard, the Court notes, for example, that the words "defect" and "defective" have acquired legal meanings in the context of products liability, but those definitions are irrelevant here. *See* BLACK'S LAW DICTIONARY 481 (9th ed. 2009) (defining a "defect" as "[a]n imperfection or shortcoming, esp. in a part that is essential to the operation or safety of a product," and defining "defective," when referring to a product, as "containing an imperfection or shortcoming in a part essential to the product's safe operation."); *see also id.* (defining "design defect," "hidden defect," "latent defect," "manufacturing defect," "marketing defect," "patent defect," and "product defect" in the products liability context); *see also id.* (defining "fatal defect" as "[a] serious defect capable of nullifying a contract.").

COLLEGIATE DICTIONARY 326 (11th ed. 2005). Similarly, Black's Law Dictionary defines the term "defective"—when referring to "a position, right, act, or process"—as "[l]acking in legal sufficiency." BLACK'S LAW DICTIONARY 481 (9th ed. 2009). Black's Law Dictionary further defines a "defect of form" as "[a]n imperfection in the style, manner, arrangement, or nonessential parts of a legal document, as distinguishable from a substantive defect," and defines a "defect of substance" as "[a]n imperfection in the substantive part of a legal document, as by omitting an essential term." *Id.* at 481–82.

The Virgin Islands Elections Code provides that "[t]here shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein, stating," among other things, "that [s]he is eligible for such office." 18 V.I.C. § 383.[16] Thus, if a candidate for office files nomination papers which, by law, must include an affidavit stating that she is eligible to hold the office she is seeking, and she is in fact ineligible to hold such office, the candidate's nomination papers are "defective" because they are "imperfect in form or function," "lacking in legal sufficiency," and "lack[ing] . . . something necessary for completeness, adequacy, or perfection." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 326; BLACK'S LAW DICTIONARY 481. In other words, such nomination papers are defective by way of a "defect of substance," because they omit an essential term: an accurate statement that the candidate is eligible to hold office.[17]

---

[16] Thus, the affidavit is, by statute, an integral part of a candidate's nomination papers. Since one's eligibility to hold office is obviously critical to the nomination and elections process, and the affirmation of one's eligibility is contained in an affidavit that must be appended to the nomination papers, the absence of such an affidavit would appear to render the nomination papers incomplete, and therefore defective.

[17] Such was the case here. It is undisputed that, based on the Supreme Court of the Virgin Islands' August 28, 2014 ruling, Senator Hansen was not eligible to hold the office of Senator in the 31st Legislature of the Virgin Islands at the time that she filed her nomination papers in May

Accordingly, based on the common usage of the terms "defective" and "defect," as well as the legal definitions of "defect of form" and "defect of substance," the Court finds that the then-Territorial Court's reading in *Moorhead* of the term "defective" in Section 411(c) as including a nomination document filed by a candidate who does not meet the qualifications established by law for the office under Section 411(b)—including by virtue of an unpardoned criminal conviction—is in accord with the plain language of Section 411(c). *See Moorhead*, 18 V.I. at 243.[18]

---

2014. At the time of her May filing, however, there had been no prior determination that she was ineligible to hold office. Her nomination papers had been accepted in 2010 and 2012 despite her convictions for willful failure to file income tax returns; she in fact served as a Senator in the 29th and 30th Legislatures; her nomination papers were accepted by the Supervisor of Elections when initially filed in May 2014; and the Supreme Court of the Virgin Islands' ruling that a conviction for willful failure to file income tax returns constitutes a crime involving moral turpitude did not occur until three months after Senator Hansen filed her May 2014 nomination papers. Nonetheless, in view of the Supreme Court's ruling, Senator Hansen's May 2014 nomination papers were defective.

[18] The *Moorhead* court's interpretation of Section 411(c) and its right to cure as inclusive of candidates who do not meet the qualifications for office does not render superfluous Section 411(b), which directs the Supervisor of Elections to "disqualif [the] candidate and delete the candidate's name from the ballot" after determining that the candidate "does not meet the qualifications established by law for the office." 18 V.I.C. § 411(b); *see People of the V.I. v. Simmonds*, 58 V.I. 3, 10 (V.I. 2012) ("In 'interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous.'") (quoting *Birdman v. Office of the Governor*, 677 F.3d 167, 176 (3d Cir. 2012)). There are certainly instances when the failure to meet a qualification is likely to be incurable within the 3-day statutory window provided by Section 411(c). *See, e.g.*, 48 U.S.C. § 1572(b) (requiring members of the Legislature of the Virgin Islands to meet, for example, certain age and residency requirements in order to be eligible to hold office). This does not render the failure to meet the particular qualification any less a defect. It is simply a defect that is not subject to being cured within the statutory window, and for which the candidate's name should properly be deleted from the ballot under Section 411(b). That this is so does not mean that the qualification defects that are in fact "curable" should be similarly treated—and they are not, because Section 411(c) provides an opportunity for "defective" nomination documents to be cured. A contrary reading would seem to write into the Elections Code an arbitrary distinction between curable qualification defects and other curable defects. *See United States v. Jones*, 471 F.3d 478, 482 (3d Cir. 2006) ("'It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their

The Court thus finds that, when a candidate is deemed by the Supervisor of Elections to lack a qualification required by law for office under Section 411(b), the candidate must be notified immediately and afforded three days to cure by filing "a new, valid petition, paper or certificate," as required by Section 411(c). This interpretation is supported by the plain language of Section 411(c); it is consistent with Section 411(b); and it was adopted in *Moorhead* by the then-Territorial Court of the Virgin Islands—the only local court opinion on this issue—which provides "guidance" and "a datum for ascertaining [territorial] law," *Edwards*, 497 F.3d at 361–62.

In view of the foregoing, when Defendant Fawkes—in her role as Supervisor of Elections—notified Senator Hansen of her disqualification by letter dated September 2, 2014, Senator Hansen had three days to cure the defect in her nomination papers, pursuant to Section 411(c). By obtaining a pardon from the Governor and filing new, valid nomination papers on September 4, 2014, Senator Hansen cured the qualification defect. She was therefore eligible to run for, and serve in, the 31st Legislature of the Virgin Islands and to have her name placed on the ballot for the general election.

### b.    The Supreme Court's September 12, 2014 Order Denying Rehearing of its August 28, 2014 Decision

As noted earlier, by Opinion and Order entered on August 28, 2014—prior to Governor de Jongh's pardon of Senator Hansen—the Supreme Court of the Virgin Islands ordered that Senator Hansen's nomination papers be set aside and that her name be removed from the ballot because of the Court's conclusion that Senator Hansen's convictions for willful failure to file

---

place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.'") (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal citations and quotation marks omitted)).

income tax returns constitute crimes involving moral turpitude, and thus rendered her ineligible to serve in the 31st Legislature. (Dkt. Nos. 5-2, 5-3). In response to a Petition for Rehearing filed by the Supervisor of Elections, Caroline Fawkes—the Appellee in that action—the Supreme Court entered an Order denying the Petition on September 12, 2014. *Bryan v. Fawkes*, S. Ct. Civ. No. 2014-0046 (V.I. Sept. 12, 2014).[19]

The Supreme Court designated its September 12 Order denying Rehearing as "Not for Publication," which, under the Supreme Court's Internal Operating Procedures, means that a determination was made by the Justices that a written opinion would have "no precedential or institutional value," and the unpublished Order is not considered by the Supreme Court to be binding precedent. V.I.S.Ct.I.O.P. 5.3, 5.7.1. Moreover, to the extent that the Supreme Court's pronouncements in the Order should be deemed to provide guidance as to its future rulings, it is noteworthy for present purposes that the September 12 Order focuses on an interpretation of Title 18 V.I.C. § 412,[20] while acknowledging that 18 V.I.C. § 411(c)—upon which this Court's opinion in the instant matter is based—is a "different provision." *Bryan*, S. Ct. Civ. No. 2014-0046, at *2 n.2 (V.I. Sept. 12, 2014).

In any event, in interpreting the provisions of the Virgin Islands Election Code herein—and attempting to predict how the Supreme Court would rule in this virtually uncharted territory—this Court has considered the extent to which the Supreme Court's September 12 ruling provides any relevant insights that should guide the resolution of the instant matter. The Court finds that the Supreme Court's September 12 Order does not alter the Court's conclusions

---

[19] This Court's TRO in this separate "post-pardon" matter was entered earlier the same day.

[20] Section 412 is the vehicle through which individuals bring actions in the Superior Court challenging nomination documents that have been filed with, and accepted by, the Supervisor of Elections. 18 V.I.C. § 412. Bryan's challenge to Defendant Fawkes' certification of Senator Hansen's nomination papers was filed in accordance with this statutory provision.

reached above.

There are two issues arising from the Supreme Court's September 12 Order that are worthy of mention in the present context. First, in interpreting a provision in Section 412 that "authorizes the Superior Court to provide a candidate with an opportunity to cure," the Supreme Court noted: "Given that Bryan's objection in this case related to Hansen's eligibility to run given her convictions for crimes involving moral turpitude, it is not clear whether the defect in this case could be characterized as a defect with the nomination paper itself." *Id.* at *4 n.3. The Supreme Court continued: "In any case, we decline to decide the issue as part of this rehearing petition." *Id.*

This passage in the Supreme Court's Order does not aid this Court in resolving the issues presented here. In interpreting Section 412, the Supreme Court raises the question whether a defect in a candidate's qualifications can be deemed to constitute a defect in the nomination papers. *Id.* However, it declined to answer the question in addressing the rehearing petition before it. *Id.* As discussed above, a similar issue is raised in the context of Section 411. Based on this Court's analysis of Section 411—including the language of the statutory provisions, the common meaning of the operative words, and the interpretation of the same provisions in *Moorhead*—this Court answered the question in the affirmative. In raising and not answering a similar question under Section 412, the Supreme Court's September 12 Order affords no guidance that alters this Court's conclusion that a candidate's failure to satisfy the qualifications for office—including by having an unpardoned conviction for a crime involving moral turpitude—renders the candidate's nomination papers defective within the meaning of Section 411(c).

Second, in the September 12 Order, the Supreme Court addressed the Petitioner's

contention that the Court's decision was premature in that the Court, "rather than directing that Hansen's nomination papers be set aside, should have *sua sponte* granted Hansen an unspecified period of time to obtain a pardon." *Id.* at *2. In responding, the Supreme Court focused on a provision in Section 412 which states that the Superior Court, "may, in its discretion, permit amendments [to the nomination document] within such time . . . as the court may specify." *Id.* at *3 (quoting 18 V.I.C. § 412). The Supreme concluded that, under Section 412, the Superior Court has the *discretion* to permit candidates to amend their nomination documents and, therefore, "section 412 clearly contemplates that candidates whose nomination papers have been challenged in the courts do not have an automatic right to cure the defect." *Id.*

Although the Supreme Court's Order does not so state, one might argue that the Order could be read to mean that once a candidate's nomination papers are challenged successfully in the courts under Section 412, the candidate loses the ability to cure under Section 411 in response to a notice of defect reflecting the court's ruling from the Supervisor of Elections. However, the relevant issue before the Supreme Court in the Fawkes Petition for Rehearing— whether the *Superior Court* was required to permit Senator Hansen an "*unspecified period of time*," pursuant to *Section 412*, to amend her nomination papers after they were successfully challenged in court—is distinct from the issue before this Court, which is whether Fawkes, as *the Supervisor of Elections*, was required to permit Senator Hansen *three days* from her notice of disqualification to cure, pursuant to *Section 411(c)*.[21]

It appears to this Court that the Supreme Court's statement regarding the lack of an "automatic right to cure," when considered in context, was referring only to a candidate's ability

---

[21] As previously noted, by letter dated September 2, 2014, Defendant Fawkes provided Senator Hansen with notice of her disqualification based on the Supreme Court's ruling. (TRO Hearing Ex. 4).

to cure under Section 412, which, by statute, is subject to the court's discretion. The Supreme Court does not appear to have addressed a candidate's ability to cure under Section 411(c), which is statutorily required upon a candidate's receipt of a notification from the Supervisor of Elections identifying the defect. In other words, the provision in Section 412 that permits the Superior Court—following a finding that a nomination document must be set aside—the *discretion* to "permit amendments within such time . . . as the court may specify," does not disturb Section 411(c)'s *requirement* that a candidate be afforded three days to cure following receipt of a notice of defect from the Supervisor of Elections.

A contrary interpretation would appear to raise significant issues. First, the same statutory provision which provided the basis for Senator Hansen's disqualification—Section 6(b) of the Revised Organic Act—mandates that she is eligible to be a member of the Legislature by virtue of the Governor's pardon. 48 U.S.C. § 1572(b) ("No person shall be eligible to be a member of the legislature who . . . has been convicted of a felony or of a crime involving moral turpitude *and has not received a pardon restoring his civil rights*.") (emphasis added). Because the Legislature of the Virgin Islands is not authorized to enact laws that are inconsistent with the Revised Organic Act,[22] any interpretation of the applicable local statutory provisions must be in concert with that federal statute. Under the circumstances here, an extension of the Supreme Court's "no automatic right to cure" interpretation of Section 412 to Section 411, so as to preclude the official restoration of Senator Hansen's eligibility for office, would seem to nullify the portion of Section 6(b) that renders a candidate eligible for office if the conviction is pardoned.

---

[22] *See supra* note 9 (noting that "[p]ursuant to the Revised Organic Act, the Legislature of the Virgin Islands is vested with the power 'when within its jurisdiction and not inconsistent with the other provisions of [the Revised Organic Act] . . . to enact . . . laws not inconsistent with any law of the United States applicable to the Virgin Islands . . . .'") (quoting 48 U.S.C. § 1574(c)).

Second, an extension of the Supreme Court's "no automatic right to cure" interpretation of Section 412 to Section 411 would seem to build an inequity into the nominations process based on the fortuity of whether a candidate happens to be the first person whose particular type of defect is accepted by the Supervisor of Elections and then successfully challenged in court. Using this case as an example, in the future, the Supervisor of Elections—guided by the Supreme Court's August 28, 2014 decision—will know that the crime of willful failure to file income tax returns is a crime involving moral turpitude. Accordingly, any candidate who presents nomination papers with such a qualification defect would, pursuant to Section 411(c), be notified of the defect by the Supervisor and provided with the opportunity to cure. However, because Senator Hansen's case is the first one of its type to be challenged successfully in the courts, she would not be entitled to an automatic right to cure under Section 412 and—unlike those who may follow—would be precluded from utilizing the automatic cure provision of Section 411(c) after receiving notice of the defect from the Supervisor of Elections. This same inequity would present itself under similar circumstances, regardless of the nature of the defect at issue. It would seem counterintuitive that the Legislature would have intended to create such a seemingly arbitrary distinction.

Finally, although the Court will not reach the constitutional issues in view of its ruling on the merits—and without purporting to decide the constitutional issues—the Court notes that interpreting Sections 411 and 412 to prohibit Senator Hansen from curing would require an inherently difficult analysis of the underlying constitutional issues. "[I]t is self-evident that state statutes regulating ballot access 'inevitably affect—at least to some degree—the individual's right to vote and his right to associate with others for political ends.'" *Belitskus v. Pizzingrilli*, 343 F.3d 632, 643 (3d Cir. 2003) (quoting *Council of Alternative Political Parties v. Hooks*, 179

F.3d 64, 70 (3d Cir. 1999)). To assess a plaintiff's claim that an election law is in violation of the plaintiff's First and Fourteenth Amendment associational rights, courts balance the "'character and magnitude' of the burden the [Territory's] rule imposes on those rights against the interests the [Territory] contends justify that burden, and consider the extent to which the [Territory's] concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). The Third Circuit has noted that "[i]n conducting this analysis, 'we cannot speculate about possible justifications' for the challenged statute, but instead 'must identify and evaluate the precise interests put forward by the [Territory] as justifications for the burden imposed by its rule.'" *Belitskus*, 343 F.3d at 645 (quoting *Reform Party v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 315 (3d Cir. 1999)). Without evaluating the "character and magnitude" of the burden that would be imposed were Section 412 interpreted to disturb a candidate's right under Section 411(c) to cure, the Court notes that Defendants have identified no governmental interests here that justify any burden. To the contrary, Defendants argue for an interpretation of the relevant statutory provisions that would allow for the opportunity to cure, and therefore, as applied here, would not burden Plaintiffs' First and Fourteenth Amendment rights. Accordingly, undertaking the constitutional analysis under these circumstances would place a court in the posture of attempting to justify restrictions that may implicate First Amendment rights and that the Territory argues against employing.

Upon consideration of these various factors, the Court concludes that the Supreme Court's September 12, 2014 Order does not alter the Court's conclusions reached above.

### 3.      Conclusion

For all of the foregoing reasons, the Court finds that Plaintiffs have succeeded on the merits of their claim that, under the relevant statutory provisions of the Revised Organic Act and the Virgin Islands Elections Code, Senator Hansen's name must be placed on the ballot for the November 4, 2014 general election. Because the Court finds that Plaintiffs have succeeded on the merits of their claim based on the relevant provisions of the Revised Organic Act and the Virgin Islands Elections Code, the Court need not reach Plaintiffs' constitutional arguments. *See Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997) ("'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.'" (quoting *Spector Motor Service* v. *McLaughlin*, 323 U.S. 101, 105 (1944) (alteration in original)).

## B.      Other Factors for Injunctive Relief

Having determined that Plaintiffs have succeeded on the merits, the Court briefly considers the remaining factors for injunctive relief—irreparable injury, harm to the nonmoving party, and the public interest.

First, Plaintiffs have demonstrated irreparable injury in that there is no adequate remedy at law for a qualified candidate whose name is improperly left off of an election ballot. *Accord Queens Cnty. Republican Comm. v. N.Y. State Bd. of Elections*, 222 F. Supp. 2d 341, 346 (E.D.N.Y. 2002) ("The plaintiffs have established irreparable injury. If Reich's name legitimately belongs on the ballot and it does not appear, then no monetary award will redress the injury to Reich or the Queens County Republican Committee.") (citation omitted). Further, in view of Defendants' position that Senator Hansen's name should be placed on the ballot, Defendants will suffer no harm, as the nonmoving party, by the issuance of injunctive relief.

29

Finally, the public interest will be served by placing on the ballot the name of a candidate who meets the qualifications both for nomination and for holding office. *Accord Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993); *Jones v. McGuffage*, 921 F. Supp. 2d 888, 902 (N.D. Ill. 2013) (noting that "[t]here is no public interest in . . . excluding qualified candidates [from the ballot]," and that "[t]here is no evidence that voters would be burdened by the inclusion of two additional candidates, so the more compelling public interest is in the expression and associational rights of the plaintiffs."); *Perry v. Judd*, 840 F. Supp. 2d 945, 960 (E.D. Va. 2012) ("The 'right to vote freely for the candidate of one's choice is of the essence of a democratic society.' Although the public can and should rely on the Board for a smooth, machine-like operation of the electoral process, the public interest more closely lies with the voter's ability to cast a ballot for the candidate of her choice.") (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)).

Accordingly, the Court finds that the remaining factors also favor the entry of a permanent injunction under the circumstances here.

## IV.    DECLARATORY RELIEF

Plaintiffs also request an Order from this Court declaring that Governor de Jongh's September 3, 2014 pardon "removes any impediment" under Section 6(b) of the Revised Organic Act—based on Senator Hansen's 2008 convictions—to Senator Hansen's eligibility to run for the office of Senator in the Legislature of the Virgin Islands, or to currently serve as a Senator in the Legislature. (Dkt. No. 1 at ¶ 8). The Court will grant in part and deny in part Plaintiffs' request for declaratory relief.

### A.    Applicable Legal Principles

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, provides that "[i]n a case of

30

actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This provision "place[s] a remedial arrow in the district court's quiver" and confers a "unique and substantial discretion" on federal courts to determine whether to declare litigants' rights. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995). "According to the Advisory Committee Note to Federal Rule of Civil Procedure 57 entitled Declaratory Judgments, 'the existence or non-existence of any right, duty, . . . or immunity . . . may be declared.'" *United States v. Com. of Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1074–75 (3d Cir. 1991) (alteration in original). One of the purposes of the Declaratory Judgment Act is to "clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990).

Pursuant to this authority, the Court will address Plaintiffs' request for declaratory relief.

## B.    Senator Hansen's Eligibility to Run for Senatorial Office

The Court will grant Plaintiffs' request for declaratory relief as to the effect of the Governor's pardon on Senator Hansen's eligibility to run for the office of Senator in the Legislature of the Virgin Islands. As discussed above, the Governor's pardon of Senator Hansen "restore[d] [Senator Hansen's] civil rights in all respects" (Dkt. No. 5-6), and thereby removed the impediment under Section 6(b) of the Revised Organic Act that would have rendered Senator Hansen ineligible to run for the office of Senator in the Legislature of the Virgin Islands. *Lettsome*, 672 F. Supp. at 863; *Castillo*, 756 F.3d at 1274. Accordingly, the Court will enter declaratory relief in Plaintiffs' favor to that effect.

**C.     Senator Hansen's Eligibility to Currently Serve as a Senator**

The Court finds that Plaintiffs' request for declaratory relief that the Governor's pardon removes any impediment to Senator Hansen serving as a *current* Senator in the Legislature of the Virgin Islands is not ripe. At the TRO hearing, this Court questioned whether this issue was ripe, given that the Legislature of the Virgin Islands has taken no action in this regard. Counsel for Plaintiffs asserted that there was a recent article in the newspaper reporting that "one of the Senators has called for a hearing on [Senator Hansen's] eligibility to now hold office based on the Supreme Court's opinion." The Court's very serious concerns about the ripeness of this issue were not assuaged by counsel's response. *See Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (observing that the ripeness doctrine seeks to '"determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."') (quoting *Peachlum v. City of York, Pa.*, 333 F.3d 429, 433 (3d Cir. 2003)); *see also Legislature of the V.I. v. Mapp*, 24 V.I. 304, 305 (D.V.I. 1989) (holding, in a case where the Legislature of the Virgin Islands requested—among other relief—a declaration that a sitting member was ineligible to continue serving under Section 6(b) of the Revised Organic Act, that "[b]ecause the legislature ha[d] not acted on the issue of Mr. Mapp's qualifications to continue as an incumbent, the court ha[d] no jurisdiction over the matter. Our jurisdiction . . . must always follow the action of the legislature itself, or its failure to act, which creates a violation of the Organic Act.").

In determining whether a dispute is ripe, courts generally consider "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967).  However, the Third Circuit employs a "more refined test" to determine whether courts should engage in "pre-enforcement review in the

32

context of a declaratory judgment action: (1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for a conclusive legal judgment[;] and (3) the judgment must be useful to the parties." *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (citing *Step-Saver*, 912 F.2d at 647).

The Court notes the obvious first. The Legislature of the Virgin Islands is not a party to this action. Thus, Plaintiffs' request for declaratory relief fails the first component of the Third Circuit's "refined test" for the determination of ripeness because the parties to *this* action do not have adverse interests with regard to this issue. *Surrick*, 449 F.3d at 527.

The other two factors are also not satisfied. There is nothing in the record indicating that the Legislature of the Virgin Islands will actually hold a hearing on Senator Hansen's eligibility. Rather, all that is before the Court is Plaintiffs' counsel's representation at the TRO hearing that a newspaper reported that one Senator is *calling* for such a hearing. Even if a hearing was *actually* scheduled, the outcome of any such hearing remains uncertain. *See Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (holding that a proposal to audit a hospital was not fit for decision, and thus not ripe, because "[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action"; that "an investigation is the beginning of a process that may or may not lead to an ultimate enforcement action"; and that "the possibility that no enforcement action may be taken is real for several reasons, not least of which is that the inspector general may change her mind on one or more issues along the way.") (internal citation and quotation marks omitted); *see also Wilson v. Jacobs*, 350 F. App'x 614, 616 (3d Cir. 2009) ("Here, none of the three elements is satisfied. The parties do not have adverse interests nor is there a conclusive judgment since the Committee has not yet acted on Wilson's bar application. Further, we agree with the District Court that issuing a

33

judgment at this time would not be useful to the parties inasmuch as Wilson's claim involves uncertain and contingent events, namely, that the Committee may grant or deny his application.") (citation omitted). Thus, there is no concrete issue to adjudicate, and any judgment would not be useful to the parties.

Accordingly, the Court will deny, without prejudice, Plaintiffs' request for declaratory relief as it pertains to Senator Hansen's current service as a Senator in the Legislature of the Virgin Islands.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' request for injunctive relief and enter a Permanent Injunction directing Defendants Caroline Fawkes, as Supervisor of Elections for the Virgin Islands, and the Joint Board of Elections, to place Senator Alicia "Chucky" Hansen's name on the ballot for the upcoming November 4, 2014 general election. Further, the Court will grant Plaintiffs' request for declaratory relief, in part, and enter an Order stating that the "Pardon of Alicia 'Chucky' Hansen" issued by John P. de Jongh, Jr., Governor of the Virgin Islands, on September 3, 2014 "removes any impediment" under Section 6(b) of the Revised Organic Act to Senator Hansen's eligibility to run for the office of Senator in the Legislature of the Virgin Islands, based on Senator Hansen's 2008 convictions for willful failure to file income tax returns. The Court will deny, without prejudice, Plaintiffs' request for declaratory relief as it pertains to Senator Hansen's current service as a Senator in the Legislature of the Virgin Islands. An appropriate Order accompanies this Memorandum Opinion.

Date: September 24, 2014                         _____/s/_____
                                                 WILMA A. LEWIS
                                                 Chief Judge