## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |
|---|---|
| PAUL PAYNE, GLENDALY FELIX, TYRONE HENDRICKSON, ANNETH EVELYN and NANCY PAULINA,  Plaintiffs,  v.  CAROLINE FAWKES, in her Individual Capacity, and in her Capacity as Supervisor of Elections for the U.S.V.I., and the JOINT V.I. BOARD OF ELECTIONS,  Defendants. | Civil Action No. 2014-053 |
| SENATOR ALICIA "CHUCKY" HANSEN,  Plaintiff,  v.  CAROLINE FAWKES, in her Individual Capacity, and in her Capacity as Supervisor of Elections for the U.S.V.I., and the JOINT V.I. BOARD OF ELECTIONS,  Defendants. | Civil Action No. 2014-055 |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Rhea Lawrence, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiffs*

**Carol Thomas-Jacobs, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendants*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiffs' "Emergency Motion to Stay & Enjoin Superior Court Contempt Proceedings Against Defendant Fawkes Using Court's All-Writs-Act Powers and Brief in Support" (1:14-cv-0053, Dkt. No. 30; 1:14-cv-0055, Dkt. No. 24), and Plaintiffs' "Amended Supplemental Brief on Issue of the Scope of Relief Requested by This Court's Exercise of Its' [sic] All-Writ[s]-Act Power" (1:14-cv-0053, Dkt. No. 32; 1:14-cv-0055, Dkt. No. 26).[1]

In the Emergency Motion, Plaintiffs request that this Court, pursuant to its powers under the All Writs Act, 28 U.S.C. § 1651—and through application of two exceptions set forth in the Anti-Injunction Act, 28 U.S.C. § 2283—enjoin certain proceedings in an action in the Superior Court of the Virgin Islands ("the Superior Court action"). (Dkt. No. 30 at 1-2).[2] The Superior

---

[1] These two cases—one brought by Senator Alicia "Chucky" Hansen and, and one brought by several of her supporters—were consolidated for all purposes. (1:14-cv-0053, Dkt. No. 18; 1:14-cv-0055, Dkt. No. 13). For ease of reference, the Court will cite to the docket numbers from Civil Action No. 14-cv-0053 only.

The full background of this matter is contained in this Court's Memorandum Opinion in support of the entry of permanent injunctive and declaratory relief, *Payne v. Fawkes*, 2014 U.S. Dist. LEXIS 134451 (D.V.I. Sept. 24, 2014), and in this Court's Memorandum Opinion in support of its Order remanding the Superior Court action, *Bryan v. Fawkes,* 2014 U.S. Dist. LEXIS 139025 (D.V.I. Oct. 1, 2014), and thus will not be repeated here. Only selected portions of the background necessary for context or a resolution of the instant Emergency Motion will be included in this Memorandum Opinion.

[2] Specifically, Plaintiffs seek entry of the following Order by this Court:

> The Superior Court is directed that it may not interfere with, or take any action inconsistent with, the District Court's Permanent Injunction that, "Defendants Caroline Fawkes, as Supervisor of Elections for the Virgin Islands, and the Joint Board of Elections are directed to place Senator Alicia 'Chucky' Hansen's name on the ballot for the upcoming November 4, 2014 general election." The Superior Court is specifically enjoined from holding Fawkes in contempt for complying

Court proceedings will address a motion filed by Adelbert Bryan—the plaintiff in the Superior Court action—requesting that the Superior Court: (1) enforce an Order that was entered in the Superior Court action on August 29, 2014, requiring Defendant Caroline Fawkes ("Defendant Fawkes"), as Supervisor of Elections for the Virgin Islands, to remove the name of Plaintiff Senator Alicia "Chucky" Hansen ("Senator Hansen") from the ballot for the upcoming November 4, 2014 general election; and (2) hold Defendant Fawkes in contempt for allegedly violating the Superior Court's August 29 Order (the "Enforcement and Contempt Motion").[3] (Dkt. No. 28-2 at 1). The Superior Court Order at issue was entered pursuant to a directive by the Supreme Court of the Virgin Islands, based on the Supreme Court's ruling that Senator Hansen's 2008 tax convictions constituted crimes involving moral turpitude, which rendered her ineligible to serve in the Legislature pursuant to Section 6(b) of the Revised Organic Act of 1954, 48 U.S.C. § 1572(b). *Bryan v. Fawkes,* 2014 WL 4244046 (V.I. Aug. 28, 2014). Defendant Fawkes complied with the Superior Court Order and removed Senator Hansen's name from the ballot.

Subsequently, in this District Court action—which was filed by Plaintiffs following the issuance of a pardon of Senator Hansen by Governor John P. de Jongh, Jr., on September 3, 2014—this Court entered a Temporary Restraining Order and a Permanent Injunction, both of which directed Defendants Fawkes and the Virgin Islands Joint Boards of Elections ("Joint

---

    with the Court's Permanent Injunction or taking any other "enforcement action" that is inconsistent with the District Court's Permanent Injunction, or from issuing any advisory opinions that would undermine the District Court's authority to enter the Permanent Injunction. Senator Hansen's ballot status and eligibility for the upcoming election is under the District Court's exclusive jurisdiction. Any relief from the District Court's Permanent Injunction must be requested from the District Court.

(Dkt. No. 32 at 3).

[3] Senator Hansen is an intervening Defendant in the Superior Court action and one of the Plaintiffs in this District Court action.

Boards") to place Senator Hansen's name back on the ballot for the November 4, 2014 general election. (Dkt. Nos. 20, 26). This Court also issued declaratory relief that the Governor's pardon of Senator Hansen removed any impediment under Section 6(b) of the Revised Organic Act to Senator Hansen's eligibility to run for senatorial office in the Legislature of the Virgin Islands based on her tax convictions. (Dkt No. 26). Defendants Fawkes and the Joint Boards complied with this Court's Order by placing Senator Hansen's name back on the ballot.

In view of this Court's Permanent Injunction—which is based on the circumstances as they existed *after* the issuance of Governor de Jongh's pardon—Plaintiffs seek an Order from this Court enjoining the Superior Court from considering any action that would interfere with, or otherwise impair, this Court's rulings. (Dkt. No. 28).[4] Notwithstanding the troubling nature of what seemingly would be a back door entry into the post-pardon rulings in this District Court action via a Superior Court action that involved litigation of a different issue in a different (pre-pardon) context—including an attempt to have Defendant Fawkes held in contempt for complying with this Court's Temporary Restraining Order and Permanent Injunction—this Court must nonetheless adhere to well-established law that precludes interference with the Superior Court proceedings. Accordingly, Plaintiffs' Emergency Motion will be denied.

---

[4] In their Emergency Motion, Plaintiffs assert that Bryan's Enforcement and Contempt Motion before the Superior Court "directly attacks this Court's authority to enter its Permanent Injunction that involved intertwined issues of federal and territorial law"; that the "mere possibility of inconsistent injunctive relief will cause a crisis among the Courts and will put Fawkes in an impossible position of being in contempt of inconsistent Court orders"; that "Bryan is trying to manipulate the dual [federal and local court] system with unfair and false arguments about the scope of what was at issue in the territorial court system," and therefore a stay of the Superior Court proceedings is warranted through the use of this Court's All Writs Act powers to aid in the enforcement of its orders and injunctions, which, in turn, is authorized by express exceptions to the Anti-Injunction Act. (Dkt. No. 30 at 2, 3, 13).

4

**DISCUSSION**

Plaintiffs rely on the All Writs Act and exceptions found in the Anti-Injunction Act to provide the authority for this Court, preemptively, to enjoin the Superior Court's adjudication of Bryan's Enforcement and Contempt Motion. However, the exceptions set forth in the Anti-Injunction Act do not apply and, as a result, the All Writs Act cannot serve as a vehicle for this Court to enjoin the proceedings in Superior Court.

**A. The All Writs Act and the Anti-Injunction Act**

Although Plaintiffs appear to cite the All Writs Act and certain exceptions to the Anti-Injunction Act as *separate* grounds for this Court to enjoin the Superior Court proceedings, the applicable case authority provides that the two statutes act "in concert" with each other. *Carlough v. Amchem Prods., Inc.,* 10 F.3d 189, 201 n.9 (3d Cir. 1993).[5] A party must first succeed in demonstrating that one of the exceptions to the Anti-Injunction Act applies before it may use the broader provisions of the All Writs Act to obtain the injunctive relief that it seeks.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Because "[t]he District Court of the Virgin Islands was established by an act of Congress, 48 U.S.C. § 1611, . . . the All

---

[5] In their Emergency Motion, Plaintiffs cite a number of cases that generally discuss the All Writs Act. (Dkt. No. 30 at 5-7). In reviewing these cases, the Court finds them unhelpful for varyious reasons, among which are that: the analysis does not include mention of the Anti-Injunction Act; the circumstances clearly fit into an Anti-Injunction Act exception; the circumstances involve a hard-fought and longstanding fair housing case where state court action affected compliance with a consent decree; the circumstances involve a federal desegregation order where the court conclusorily applied the Anti-Injunction Act; the state plaintiffs were members of a federal court class action, thus satisfying the identity of parties requirement; the opinion was vacated; or the opinion presented no separate analysis of the Anti-Injunction Act as required by Third Circuit precedent. These cases do not convince the Court that enjoining the Superior Court proceedings is appropriate under the circumstances here.

5

Writs Act is applicable." *Gov't Guar. Fund of the Rep. of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 464 (D.V.I. 1997).

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The District Court of the Virgin Islands "is not a court of the United States as that term is defined in 28 U.S.C. § 451." *Id.* at 465. However, in *Hyatt Corp.,* this Court held that, while "technically not a court of the United States, the jurisdiction of the District Court of the Virgin Islands is sufficiently 'federal' that this Court should be mindful of 'needless friction' with the state courts[.]" *Id.* (quoting *Michum v. Foster*, 407 U.S. 225, 232-33 (1972) that the Anti-Injunction Act's "basic purpose is to prevent needless friction between state and federal courts."). This Court finds that *Hyatt Corp.* is well-reasoned, and will therefore apply the teachings and the body of law underlying the Anti-Injunction Act to the relationship between the federal and local courts in the Virgin Islands.

In explaining the interplay between the All Writs Act and the Anti-Injunction Act, the Third Circuit has opined: "Typically, the All Writs Act has been used by federal courts to enjoin action by state courts that threatens the federal court's jurisdiction. In this context, the Anti-Injunction Act restricts injunctions under the All Writs Act that have the effect of staying a state court proceeding to those 'expressly authorized by Act of Congress, or where necessary in aid of [a federal court's] jurisdiction, or to protect or effectuate its judgments.'" *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 328 (3d Cir. 2007) (quoting 28 U.S.C. § 2283). As elucidated in *Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*, __ F.3d __, 2014 WL 4824790 (11th Cir. Sept. 30, 2014):

> The Anti-Injunction Act serves as a check on the broad authority recognized by the All Writs Act . . . by expressly prohibiting a federal court from enjoining state court proceedings [except as authorized under the statute]. The Anti-Injunction Act and All Writs Act are closely related; [i]f one of the three specific exceptions contained in the Anti-Injunction Act permits an injunction, the All Writs Act grants a federal court the power to use it. Thus, in assessing the propriety of an injunction entered to stop a state court proceeding, the sole relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act.

*Id.* at *13 (internal quotation marks and citations omitted).

The Anti-Injunction Act—first enacted in 1793—"is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). The Act's "core message is one of respect for state courts. The Act broadly commands that those tribunals 'shall remain free from interference by federal courts.'" *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011) (quoting *Atl. Coast Line R.R. Co. v. Locomotive Engineers*, 398 U.S. 281, 282 (1970)). In interpreting the Anti-Injunction Act, the Supreme Court cautions that the exceptions to the Anti-Injunction Act "are narrow and are not [to] be enlarged by loose statutory construction." *Chick Kam Choo,* 486 U.S. at 146 (internal quotation marks omitted). Further, principles of federalism militate that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co.,* 398 U.S. at 297.

Plaintiffs assert that two of the Anti-Injunction Act exceptions apply, which authorize this Court to enjoin the Superior Court proceedings: the "necessary in aid of its jurisdiction" exception and the need to "protect or effectuate its judgments" exception (also known as the "relitigation exception"). The Court finds that neither exception applies, and therefore must deny Plaintiffs the relief they seek.

7

**B. The "Necessary in Aid of Its Jurisdiction" Exception**

Plaintiffs provide very little factual or legal authority to demonstrate the applicability of the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act. They state, in passing and without further argument, that "this is effectively an *in rem* proceeding where the conduct of one public official is at issue," and that "[t]he 'in aid of jurisdiction' exception applies to preclude parallel state *in rem* proceedings and also authorizes injunctions in, for example, consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." (Dkt. No. 30 at 2, 5).[6] Plaintiffs do not explain how this exception might actually apply.

The "in aid of jurisdiction" exception applies "where the effect of [a state court proceeding] would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached." *Kline v. Burke Constr. Co.,* 260 U.S. 226, 229 (1922). In contrast, "an *in personam* action involves a controversy over liability rather than over possession of a thing." *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 426 (2d Cir. 2004). For that reason, an *in personam* action generally "'does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.'" *Id.* (quoting *Kline,* 260 U.S. at 230). The Supreme Court "has never held that a district court may enjoin a parallel *in personam* action under the 'in aid of jurisdiction'

---

[6] Black's Law Dictionary defines "in rem" as "[i]nvolving or determining the status of a thing, and therefore the rights of persons generally with respect to that thing." An action *in rem* "is one in which the judgment of the court determines the title to property and the rights of the parties, not merely as between themselves, but also as against all persons at any time dealing with them or with the property upon which the court had adjudicated." *Black's Law Dictionary* (9th ed. 2009).

8

exception." *Wyly v. Weiss,* 697 F.3d 131, 138 (2d Cir. 2012) (citing cases).

The actions in both this Court and the Superior Court are *in personam* actions. Plaintiffs do not explain how the federal court action could possibly be considered *in rem,* what would constitute the "res," and how, in this instance, the state court proceeding may impair or defeat this Court's jurisdiction over the "res". *Cf. In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002) (enjoining state court proceedings under this exception because federal court was "entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts."). Accordingly, this Court finds that the "in aid of jurisdiction" exception of the Anti-Injunction Act does not apply, and cannot form the basis for the District Court to enjoin the Superior Court action.

### C. The "Relitigation" Exception

Plaintiffs also contend that the "relitigation exception" to the Anti-Injunction Act applies. They state that, under that exception, "this Court may preclude the Superior Court from deciding issues that this Court has already decided covering the same subject matter that are sufficiently final that an appeal may lie from the judgment or order." (Dkt. No. 30 at 6). Plaintiffs note that the permanent injunction is a final, appealable order for purposes of res judicata and collateral estoppel. *Id.* In their Supplemental Brief, they further assert that the relitigation exception applies to protect this Court's "valid exercise of supplemental jurisdiction powers granted it by Congress." (Dkt. No. 32 at 2). However, under the circumstances here, Plaintiffs' reliance on the "relitigation exception" is also unavailing.

In *Bayer Corp.*, the Supreme Court discussed the relitigation exception at length. It described this exception as being "designed to implement 'well-recognized concepts' of claim and issue preclusion"—authorizing an injunction "to prevent state litigation of a claim or issue

9

'that previously was presented to and decided by the federal court.'" 131 S. Ct. at 2375 (quoting *Chick Kam Choo,* 486 U.S. at 147); *see also Frank v. United Airlines, Inc.,* 216 F.3d 845, 853 (9th Cir. 2000) (observing that the "requirements of identity of the parties, identity of the factual claim or issue, adequate notice, and adequate representation apply to both claim and issue preclusion."). The *Bayer* Court opined that:

> [A] court does not usually get to dictate to other courts the preclusion consequences of its own judgment. Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court. . . . So issuing an injunction under the relitigation exception is resorting to heavy artillery. For that reason every benefit of the doubt goes toward the state court; an injunction can issue only if preclusion is clear beyond peradventure.

131 S. Ct. at 2375-76 (internal quotation marks and citations omitted).

"The preclusive effect of a federal-court judgment is determined by federal common law"—which would apply in this federal question case. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). The Supreme Court has instructed that, for a federal court's determination of an issue to have preclusive effect, "at least two conditions must be met. First, the issue the federal court decided must be the same as the one presented in the state tribunal. And second, [the party seeking to proceed in the state action] must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties." *Bayer*, 131 S. Ct. at 2377 (internal citation omitted).

Taking these two requirements in reverse order, there is not an identity of parties in the Superior Court and District Court actions. In general, "[a] party to litigation is one by or against whom a lawsuit is brought or one who become[s] a party by intervention[.]" *Id.* at 2378 (internal quotation marks and citations omitted). Significantly, Bryan is not, and has never been, a party in the federal court action. Nor have his interests been sufficiently parallel to those of the federal defendants such that privity could be implied. *See* Enforcement and Contempt Motion, Dkt. No.

28-2 at 4 (stating that, in TRO hearing in District Court, the attorney for the Virgin Islands Attorney General, who was acting as the legal representative for Defendants Fawkes and the Joint Board, "agreed with the Plaintiffs' [sic] and argued all points identically to what Plaintiffs had argued. . . . [The attorney] had a myriad of legal defenses to which she could have presented to the District Court in defense of the Defendants in this case, and intentionally did not do so."). *See, e.g., Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 273 (5th Cir. 2009) (stating that for relitigation exception to apply, the "parties in the later action must be identical to or in privity with the parties in the previous action."); *Sandpiper Vill. Condo Ass'n, Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 848-49 (9th Cir. 2005) (observing that without identity of or privity between parties to litigation, the relitigation exception to Anti-Injunction Act is inapplicable).

Given that Bryan is not a party to the federal litigation and lacks privity with any of the parties therein, this Court cannot enjoin the Superior Court proceeding under the relitigation exception. *See Drelles v. Metropolitan Life Ins. Co.*, 357 F.3d 344, 346-347 (3d Cir. 2003) (opining, in context of class action, that federal court could not enjoin state court proceeding against insurer under Anti-Injunction Act where state court plaintiffs had opted out of federal settlement with insurance company); *see also Sandpiper Vill. Condo. Ass'n, Inc,* 428 F.3d at 848-849 (holding that, as a stranger to federal proceedings and lacking privity with any of the parties, state court plaintiff was entitled to sue federal defendant in state court for its own injuries, and denying injunction under relitigation exception to Anti-Injunction Act); *De Cosme v. Sea Containers, Ltd.*, 874 F.2d 66, 68 (1st Cir. 1989) (federal court refused to enjoin state proceedings under relitigation exception to Anti-Injunction Act because state court plaintiff was not part of federal court settlement; there was a legitimate question whether res judicata or collateral estoppel applied in the state court proceeding, which was a question to be determined

by the state court); *cf. Prometheus Dev. Co., Inc. v. Everest Props.*, 289 F. App'x 211, 213 (9th Cir. 2008) (finding, on motion to dismiss, that without adequately alleging privity between plaintiffs in state court action and plaintiffs in federal action, bare allegation of privity was insufficient to state a claim in federal action seeking to enjoin state court proceedings under Anti-Injunction Act).[7]

Second, as initially presented and adjudicated, the issues in the federal and state court proceedings were completely different. In the Superior Court, Bryan brought his action based on the allegation that Senator Hansen's misdemeanor convictions constituted crimes involving moral turpitude that precluded her from qualifying for office under Section 6(b) of the Revised Organic Act, 48 U.S.C. § 1572(b). Bryan filed his petition "pursuant to 18 V.I.C. § 412, objecting to the nomination papers filed by Alicia Hansen for the 2014 General Election. (Dkt. No. 30-1 at 2). The relief he sought was to "set aside the nomination papers of Alicia Hansen because 33 V.I.C. § 1524 constitutes a crime involving moral turpitude, and therefore, that she is ineligible to hold public office and sit in the Virgin Islands Legislature, pursuant to Section (6)(b) of the Revised Organic Act of 1954." *Id.* at 15.

By contrast, the gravamen of Plaintiffs' action in this Court was based on circumstances that existed *after* the Governor issued a pardon of Senator Hansen's tax convictions on September 3, 2014. *See, e.g.,* Memorandum Opinion on Permanent Injunction: *Payne v. Fawkes*, 2014 U.S. Dist. LEXIS 134451, at *2 n.2 (D.V.I. Sept. 24, 2014) ("The issue presented to the Supreme Court and that Court's ruling thereon—which involved circumstances that existed *before* Governor de Jongh's pardon of Senator Hansen—are not before this Court. . . . Before this Court, on Plaintiffs' requests for a permanent injunction and declaratory relief, is the effect

---

[7] Bryan also does not fit any of the exceptions to the rule that nonparties to an action are not bound by a judgment in that action. *See Taylor,* 553 U.S. at 893-95.

of the *subsequent* pardon by Governor de Jongh on Senator Hansen's eligibility to run for, and serve in, the 31st Legislature, and—as integral to the process—to have her name placed on the ballot for the general election. That issue was not before the Supreme Court in its August 28 ruling."). In asking for a Temporary Restraining Order and Permanent Injunction, Plaintiffs argued, *inter alia*, that the pardon restored Senator Hansen's civil rights, which made her eligible to be a member of the Legislature under Section 6(b) of the Revised Organic Act, and that Senator Hansen's refiling of her nomination papers cured the defect in her initial nomination papers under 18 V.I.C. § 411. *Id.* at *7.

Bryan now argues, *inter alia*, in his Enforcement and Contempt Motion that Senator Hansen should not be permitted to appear on the ballot because of: (1) a deadline imposed under the Virgin Islands Code for submitting nomination papers; and (2) an interpretation of a provision of the Virgin Islands Code by the Supreme Court of the Virgin Islands—in its Order in the pre-pardon action denying Defendant Fawkes' Petition for Rehearing—which prevents Senator Hansen from appearing on the ballot for the 2014 general election. *See* Dkt. No. 28-2 at 8-9; Remand Opinion, *Bryan v. Fawkes*, 2014 U.S. Dist. LEXIS 139025, at *18. While the first issue was not argued in either the Superior Court or the District Court action, and thus was not before either Court, the second issue was addressed and decided by this Court in the post-pardon action. Notwithstanding the identity of the second issue in both the District Court action and Bryan's Enforcement and Contempt Motion in the Superior Court action, the relitigation exception is still inapplicable because there remains no identity of parties in the two actions. Thus, this possible overlap of issues would not change this Court's conclusion that the relitigation exception does not apply.

In sum, the Court finds that the relitigation exception to the Anti-Injunction Act does not

provide a basis for this Court to enjoin the proceedings in the Superior Court arising from Bryan's Enforcement and Contempt Motion.

## **CONCLUSION**

In entering permanent injunctive and declaratory relief in this matter, this Court found that Senator Hansen is eligible to run for, and serve in the 31st Legislature of the Virgin Islands, and that she must be placed on the ballot. The Court fully stands behind its ruling. Nonetheless principles of comity, federalism and respect for state courts, which is at the core of the Anti-Injunction Act, require federal courts to refrain—except for narrowly-construed exceptions—from interfering with state court proceedings. Because the Court finds that none of the exceptions to the Anti-Injunction Act applies here, "Plaintiffs' Emergency Motion to Stay & Enjoin Superior Court Contempt Proceedings against Defendant Fawkes Using Court's All-Writs-Act Powers" will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: October 6, 2014 _____/s/_____
 WILMA A. LEWIS
 Chief Judge