**FOR PUBLICATION**

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

_____
)
**PAUL PAYNE, GLENDALY FELIX,** )
**TYRONE HENDRICKSON, ANNETH** )
**EVELYN and NANCY PAULINA,** )
)
**Plaintiffs,** )
)
**v.** )   **Civil Action No. 2014-053**
)
**CAROLINE FAWKES, in her Individual** )
**Capacity, and in her Capacity as Supervisor** )
**of Elections for the U.S.V.I., and the JOINT** )
**V.I. BOARD OF ELECTIONS,** )
)
**Defendants.** )
_____)
)
**SENATOR ALICIA "CHUCKY" HANSEN,** )
)
**Plaintiff,** )
)
**v.** )   **Civil Action No. 2014-055**
)
**CAROLINE FAWKES, in her Individual** )
**Capacity, and in her Capacity as Supervisor** )
**of Elections for the U.S.V.I., and the JOINT** )
**V.I. BOARD OF ELECTIONS,** )
)
**Defendants.** )
_____)

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Rhea Lawrence, Esq.,**
St. Croix, U.S.V.I.
        _For the Plaintiffs_

**Carol Thomas-Jacobs, Esq.,**
St. Croix, U.S.V.I.
        _For the Defendants_

## **MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiffs' "Emergency Motion to Enforce Permanent Injunction [and] Brief in Support" (1:14-cv-0053, Dkt. No. 35; 1:14-cv-0055, Dkt. No. 29), filed on October 26, 2014, and Plaintiffs' "Emergency Motion for a Temporary Restraining Order Directing Defendants to Preserve the Ballots with Hansen's Name on Them for the Upcoming General Election," filed on October 31, 2014 (1:14-cv-0053, Dkt. No. 36; 1:14-cv-0055, Dkt. No. 30).[1] This Court entered an Order on October 31, 2014 denying both Motions, and indicating that this Memorandum Opinion would follow. (Dkt. No. 39).

Plaintiffs filed the Emergency Motion to Enforce the Permanent Injunction two days after the Supreme Court of the Virgin Islands ("Supreme Court") issued an Order which, *inter alia*, reversed the decision of the Superior Court of the Virgin Islands ("Superior Court") and enforced an August 29, 2014 Order directing Caroline Fawkes, the Virgin Islands Supervisor of Elections ("Fawkes"), to immediately remove the name of Senator Alicia "Chucky" Hansen ("Senator Hansen") from the November 4, 2014 general election ballot. Plaintiffs now seek an emergency order enforcing the Permanent Injunction issued by this Court on September 24, 2014, which ordered Fawkes and the Joint Virgin Islands Board of Elections ("Defendants") to place Senator Hansen's name on the general election ballot. (Dkt. No. 27 at 29).

In the Emergency Motion for a Temporary Restraining Order ("TRO"), Plaintiffs seek an order directing Defendants to "preserve and do not alter any ballots with Hansen's name on it to preserve the *status quo* for the upcoming general election so that Plaintiffs may file for

---

[1] These two cases—one brought by Senator Alicia "Chucky" Hansen and, and one brought by several of her supporters—were consolidated for all purposes. (1:14-cv-0053, Dkt. No. 18; 1:14-cv-0055, Dkt. No. 13). For ease of reference, the Court will cite to the docket numbers from Civil Action No. 14-cv-0053 only.

emergency relief with the appropriate body." (Dkt. No. 36). Plaintiffs also sought the Court's intervention because the Supervisor of Elections recently indicated that the time for Senator Hansen to file a request to conduct a write-in campaign had expired. These requests for relief are also grounded in the Permanent Injunction that this Court granted on September 24, 2014.

The September 24, 2014 Permanent Injunction embodied this Court's analysis of both federal and local law issues. (*See* Dkt. No. 27 at 9-29). With regard to the federal issues— Senator Hansen's post-pardon eligibility to be a member of the Legislature of the Virgin Islands—this Court concluded that Governor de Jongh's September 3, 2014 pardon of Senator Hansen removed any impediment to her eligibility under Section 6(b) of the Revised Organic Act ("ROA") to run for the office of Senator in the Legislature of the Virgin Islands (Dkt. No. 27 at 31), and to be a member of the 31st Legislature of the Virgin Islands. *Id.* at 14.

In discussing the practical effect of its October 24, 2014 ruling, the Supreme Court acknowledged that Senator Hansen can run for office in the current election as a write-in candidate. (Dkt. No. 35-1 at 45, 48). It is thus apparent that the Supreme Court has left this Court's rulings on the federal issues undisturbed. Further, Defendants have indicated that the Supervisor of Elections was mistaken and Senator Hansen can conduct a write-in campaign. Accordingly, there is no need for this Court to take any action as it relates to the federal issues.

With regard to the issues of local law—whether Senator Hansen was entitled to "cure" her initial disqualification, and thus have her name placed on the November 4, 2014 general election ballot—the Supreme Court has determined that such a right does not exist under Virgin Islands law in the circumstances presented by Senator Hansen's case. Although this Court arrived at a contrary conclusion in "predicting" how the Supreme Court would decide this issue of local law (*see* Dkt. No. 27 at 17-22), this Court will respect the Supreme Court's ruling on

Virgin Islands law, as the Territory's highest local court.[2] Accordingly, this Court will deny Plaintiffs' request for enforcement of its Permanent Injunction requiring that Senator Hansen's name be placed on the November 4, 2014 general election ballot and will also deny Plaintiffs' request for a TRO.

## I.     PROCEDURAL HISTORY

The background facts have been set forth in detail in the various opinions issued by this Court in this matter. *See Payne v. Fawkes*, Nos. 14-cv-53, 14-cv-55, 2014 WL 4499559 (D.V.I. Sept. 12, 2014) (Temporary Restraining Order Opinion (Dkt. No. 21)); *Payne v. Fawkes*, Nos. 14-cv-53, 14-cv-55, 2014 WL 4747320 (D.V.I. Sept. 24, 2014) (Permanent Injunction Opinion) (Dkt. No. 27); *Bryan v. Fawkes,* No. 14-cv-66, 2014 WL 4947086 (D.V.I. Oct. 1, 2014) (Remand Opinion) (Dkt. No. 8); and *Payne v. Fawkes*, Nos. 14-cv-53, 14-cv-55, 2014 WL 4979449 (D.V.I. Oct. 6, 2014) (Anti-Injunction Act Opinion) (Dkt. No. 34). For present purposes, the following summary will suffice.

On May 19, 2014, Virgin Islands voter Adelbert Bryan filed a petition in the Superior Court of the Virgin Islands alleging that Senator Hansen was ineligible to hold senatorial office in the Legislature because she had been convicted in 2008 of three misdemeanor counts of willful failure to file income tax returns. (Dkt. No. 21 at 4). The Superior Court dismissed Bryan's petition; Bryan appealed to the Supreme Court of the Virgin Islands; and the Supreme Court reversed the Superior Court's decision. *Id.* Based on the Supreme Court's ruling that Senator Hansen's tax convictions constituted crimes involving moral turpitude, which rendered her ineligible to serve in the Legislature pursuant to Section 6(b) of the Revised Organic Act of

---

[2] As discussed below, there are many aspects of the Supreme Court's opinion with which this Court respectfully disagrees. Accordingly, this Court's ruling here is not intended to reflect—nor should it be read as reflecting—an endorsement of the Supreme Court's Opinion.

1954, 48 U.S.C. § 1572(b), the Superior Court entered an Order on August 29, 2014 directing Defendant Fawkes to remove Senator Hansen's name from the ballot for the upcoming November 4, 2014 general election. *Id.*[3]

Notably, the case brought by Bryan and adjudicated by the Superior and Supreme Courts did not involve: (1) the issue of a pardon of Senator Hansen; (2) the effect of such pardon on Senator Hansen's eligibility for senatorial office and her ability to run for office in the November 4, 2014 general election; or (3) Senator Hansen's ability to file post-pardon nomination papers to cure the defect in her original papers and be on the ballot for the upcoming election. These issues were not involved in the local lawsuit because the circumstances involving the pardon had not yet occurred.

Following Governor de Jongh's pardon of Senator Hansen on September 3, 2014, Senator Hansen filed new nomination papers. However, Defendants refused to place her name on the ballot, notwithstanding the Governor's pardon. Senator Hansen and her supporters responded by filing the instant actions in this Court. Plaintiffs argued that, because the Governor's pardon restored Senator Hansen's eligibility to run for, and serve in, the 31st Legislature, Defendants' refusal to place her name on the ballot: (1) failed to give effect to provisions of the Revised Organic Act; (2) violated local law that would allow her to cure any defects in her petition; (3) violated various constitutional provisions; and (4) deprived Plaintiffs of their civil rights. (Dkt. No. 1).

After briefing and oral argument, this Court entered a TRO on the morning of September 12, 2014 and a Permanent Injunction on September 24, 2014, both of which directed Defendants

---

[3] Under Section 6(b) of the Revised Organic Act, an individual is rendered ineligible to be a member of the Legislature if convicted of a crime involving moral turpitude, unless pardoned. 48 U.S.C. § 1572(b).

Fawkes and the Joint Board to place Senator Hansen's name on the ballot for the November 4, 2014 general election. (Dkt. Nos. 20, 26). The Court also issued declaratory relief that the Governor's pardon removed any impediment under Section 6(b) of the Revised Organic Act— based on her tax convictions—to Senator Hansen's eligibility to run for senatorial office in the Legislature of the Virgin Islands. (Dkt. No. 26). Defendants complied with the Court's Order by placing Senator Hansen's name on the ballot.

Meanwhile, in the separate matter filed in the local court, the Supreme Court entered an Order on the afternoon of September 12, 2014 denying a Petition for Rehearing filed by Defendant Fawkes on September 11, 2014. *Bryan v. Fawkes*, S. Ct. Civ. No. 2014-0046 (V.I. Sept. 12, 2014). After the Supreme Court denied Defendant Fawkes' Petition for Rehearing, but before this Court issued its Permanent Injunction, Bryan filed an "Emergency Motion for Enforcement of Judgment and for Contempt Sanctions," requesting that the Superior Court issue an Order to Show Cause why Defendant Fawkes should not be held in contempt for failing to abide by the Superior Court's August 29, 2014 (pre-pardon) Order. (Dkt. No. 1-2 at 1). Bryan further requested that the Superior Court enforce the August 29, 2014 Order directing Defendant Fawkes to remove Senator Hansen's name from the ballot.

Following this Court's rejection of Plaintiffs' attempt to have the local matter removed from the Superior Court to this Court for adjudication of Bryan's Enforcement Motion (Dkt. No. 8 in 14-cv-0066), and its denial of Plaintiffs' Motion to have this Court enjoin the proceedings in the Superior Court (Dkt. No. 34 in 14-cv-0053), the enforcement action in the pre-pardon *Bryan v. Fawkes* action went forward in Superior Court. In an Order filed on October 10, 2014, the Superior Court denied Bryan's enforcement motion, finding, *inter alia*, that: (1) after issuance of the Superior Court's August 29, 2014 Order directing Fawkes to remove Hansen's name from

the ballot, "the circumstances affecting Fawkes' performance of her duties as Supervisor of Elections" were "completely changed," and Bryan failed to carry his burden of persuading the Court to impose contempt sanctions; (2) Hansen cured her defective nomination papers after the August 29, 2014 Order was issued, and thus the Order had no effect on Hansen's subsequent nomination papers; (3) the Superior Court did not have continuing jurisdiction over the election cycle; and (4) the court would not entertain Bryan's arguments "raised for the first time by his post-judgment Motion, concerning the validity of Hansen's new nominati[on] papers that were not the subject of the relief sought by his Petition." (Dkt. No. 35-2).

Bryan appealed the Superior Court's October 10, 2014 Order to the Supreme Court. On October 24, 2014, the Supreme Court reversed the Superior Court's Order, and "once again order[ed] Fawkes to immediately remove Hansen's name from the general election ballot for the November 4, 2014 general election, and remand[ed] the case to the Superior Court so that it shall issue the factual findings and conclusions of law necessary to determine whether Fawkes should be held in contempt or otherwise sanctioned for her non-compliance with the orders entered by [the Supreme] Court and the Superior Court." (Dkt. No. 35-1 at 2, *Bryan v. Fawkes*, 2014 WL 5409110 (V.I. Oct. 24, 2014)). In arriving at its conclusion, the Supreme Court found, *inter alia*, that this Court lacked jurisdiction to enter the TRO and Permanent Injunction, and therefore those opinions and orders were void, and that local Virgin Islands law did not allow someone in Senator Hansen's circumstances to cure the defect in her nomination papers. *Id.* Plaintiffs' Emergency Motion in this Court to Enforce the Permanent Injunction followed. (Dkt. No. 35).

On October 31, 2014, Plaintiffs filed an "Emergency Motion for a Temporary Restraining Order Directing Defendants to Preserve the Ballots with Hansen's Name on Them for the Upcoming General Election." (Dkt. No. 36). This filing essentially sought the same relief as

Plaintiffs' Emergency Motion to Enforce the Permanent Injunction, because it asked the Court to ensure that the ballots that had already been printed with Senator Hansen's name on them be used in the general election—in other words, it sought enforcement of the Permanent Injunction directing that Senator Hansen's name be placed on the ballot. Further, citing the declaratory relief that this Court had granted—declaring Senator Hansen's eligibility to run for office— Plaintiffs complained that the Supervisor of Elections recently indicated that the time for Senator Hansen to have filed a request to conduct a write-in campaign had expired. *Id.* The Court directed Defendants to respond to this latter contention. (Dkt. No. 37). Defendants filed a Response, in which they stated that the Supervisor of Elections was mistaken and that Senator Hansen could conduct a write-in campaign. (Dkt. No. 38).

Also on October 31, 2014, the Court issued an Order denying Plaintiffs' Emergency Motion to Enforce the Permanent Injunction and denying Plaintiffs' Emergency Motion for a TRO. (Dkt. No. 39). Pursuant to that Order, this Memorandum Opinion embodies the Court's reasoning for its ruling.

## II.    DISCUSSION

### A.  The Supreme Court's October 24, 2014 Opinion

Because this Court's ruling comes amidst numerous disagreements with the analysis and findings reflected in the Supreme Court's October 24, 2014 Opinion, the Court will first set the context for its ruling. To that end, while the Court will not mention every point of contention in the Supreme Court's 63-page Opinion, nor discuss exhaustively the issues noted herein, the Court highlights the following aspects of the Opinion with which it takes issue as *illustrative* of the many factual and legal premises espoused by the Supreme Court with which this Court

respectfully disagrees. As discussed below, principal among the issues is the Supreme Court's erroneous conclusion that this Court lacked jurisdiction over this matter.[4]

1.   **Case or Controversy.**

*Supreme Court Contention:* The Supreme Court claimed that this Court lacked subject matter jurisdiction to issue the TRO and Permanent Injunction, thus rendering those Opinions void. (Dkt. No. 35-1 at 22, 36). While acknowledging this Court's assertion of federal question jurisdiction (Dkt. No. 35-1 at 5, quoting Dkt. No. 21 at 5-6)[5], the Supreme Court stated that, because Plaintiffs and Defendants expressed similar views on the merits, there was no live case or controversy. (Dkt. No. 35-1 at 22 n.8).

*District Court Response:* The Supreme Court's contention ignores Plaintiffs' allegation in their Complaint that speaks to this precise issue: "[D]espite Senator Hansen curing the putative ROA § 6(b) defect regarding her qualifications, and the broad pardoning power of the Governor . . . , either Fawkes or the Joint Election Board has refused [to] accept Senator Hansen's new petition which she filed on September 4, 2014 or honor the old one despite the Pardon and is acting to bar Senator Hansen from appearing on the ballot[.]" (Dkt. No. 1, ¶ 7). Even more

---

[4]  The Supreme Court took a multi-faceted approach to its jurisdictional contentions. It claimed that jurisdiction was lacking in this Court because of the absence of a case or controversy; because the proceeding was *in rem* rather than *in personam*; because of the *Rooker-Feldman* doctrine; and because supplemental jurisdiction was not pleaded. *See* Dkt. No. 35-1 at 15-36. While this approach may be superficially appealing because of the number of arguments and their lengthy exposition, careful scrutiny reveals substantial flaws in the Supreme Court's analyses.

[5]  This Court asserted jurisdiction based on Plaintiffs' allegations that Defendants' actions violated the United States Constitution, the Revised Organic Act of 1954, 48 U.S.C. §§ 1541-1645, and their civil rights pursuant to 42 U.S.C. § 1983. (Dkt. No. 21 at 5-6; Dkt. No. 27 at 6-7).

striking, the Supreme Court arrived at its conclusion without discussing this Court's finding that "the live controversy arose herein from Defendants' refusal to place Senator Hansen on the ballot without a Court Order granting such relief." (Dkt. No. 21 at 3 n.4). Thus, the Supreme Court cited an alleged problem with this Court's assumption of jurisdiction without addressing the Court's articulated position on that issue. In so doing, it avoided answering the question of how, in the face of Defendants' refusal to honor the restoration of Senator Hansen's civil rights, including her eligibility for senatorial office, there was no live case or controversy between the parties for the Court's resolution.

2. *In Rem* vs. *In Personam* **Proceedings.**

*Supreme Court Contention:* The Supreme Court concluded that "the District Court lacked subject matter jurisdiction to interfere with an *in rem* proceeding that remained actively litigated in the Virgin Islands court system[.]" (Dkt. No. 35-1 at 15). It claimed that this Court "ignored numerous decisions from other courts expressly holding that an election contest is, in fact, an *in rem* proceeding, with the 'res' being the election itself." *Id.* at 24 (citing state court cases). Because, according to the Supreme Court, the local court proceeding and this Court's proceeding were both, purportedly, *in rem*, the Supreme Court found that this Court "acted outside its jurisdiction" when adjudicating Senator Hansen's claims because an *in rem* proceeding in the local court was "still ongoing." *Id.* at 27.

*District Court Response:* The actions in both the federal and local courts were "in personam," defined as an action "brought against a person" that "[i]nvolves or determin[es] the personal rights and obligations of the parties." Black's Law

Dictionary 912 (10th ed. 2014). An *in rem* proceeding is an action "against a thing" that "[i]nvolv[es] or determin[es] the status of a thing, and therefore the rights of persons generally with respect to that thing." *Id.* at 913. Whether an action is *in rem* or *in personam* is determined by the nature of the issues framed by the pleadings and the rights and remedies of the parties, rather than from the formal language employed or the form of the pleading. *See, e.g.*, *Coffey v. United States*, 117 U.S. 233, 235 (1886); *Evans v. F.C.C.*, 113 F.2d 166, 168-69 (D.C. Cir. 1940); *Boyd v. Boyd*, 340 S.E.2d 578, 580-81 (Va. Ct. App. 1986); *Arvest Bank v. SpiritBank, N.A.*, 191 P.3d 1228, 1233 (Okla. App. Div. 2008).

The Superior Court action was *in personam* because it concerned Fawkes' obligation as Supervisor of Elections to examine each candidate's qualifications and Senator Hansen's personal eligibility to hold office. *See* Complaint, *Bryan v. Fawkes*, No. SX-2014-CV-144, at 12, 14 (objecting to Fawkes's examination of Senator Hansen's nomination papers as negligent, and seeking declaration that Senator Hansen was personally ineligible to hold public office). The consolidated actions before the District Court were *in personam* because they involved Senator Hansen's eligibility to run for and hold office, her access to the election ballot, and the parties' obligations arising from Senator Hansen's eligibility. Plaintiffs alleged personal injury to fundamental rights. (Dkt. No. 1, ¶¶ 32, 44).

Accordingly, the Supreme Court's reliance on "election contest" cases is misplaced. The cases it cites, holding that election challenges proceed *in rem,* address the conduct and integrity of the election process; they do not involve a candidate's

eligibility to be placed on a ballot.[6] Moreover, in an *in rem* proceeding, a court exercises jurisdiction over *the election* to determine the rights of persons generally with respect to the results. *See Kline v. Burke Constr. Co.*, 43 S. Ct. 79, 81 (1922) ("Where the action is *in rem* the effect is to draw to the . . . court the possession or control, actual or potential, of the res."); *Foster v. Evert*, 751 S.W.2d 42, 44 (Mo. 1988) ("A general election contest challenges the validity of the very process by which we govern ourselves" and alleges "irregularity in the conduct of an election"). Here, neither the local nor federal cases challenged the election as a whole, warranting a characterization as *in rem* actions. Therefore, the rule that a court first exercising jurisdiction over a *res* maintains jurisdiction to the exclusion of a second court is not implicated.

**3.** ***Rooker-Feldman* Doctrine**.

<u>Supreme Court Contention:</u> The Supreme Court concluded that this Court "exceeded the scope of its subject matter jurisdiction" under the *Rooker-Feldman* doctrine (Dkt. No. 35-1 at 28-30), which bars a federal proceeding "when entertaining the federal claim would be the equivalent of an appellate review of [the state court] order." *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 491 (3d Cir. 1997) (internal quotation and citation omitted). The gravamen of this contention is that, in the Supreme Court's view, the District Court's TRO and Permanent Injunction, in substance, reviewed the correctness of the Superior Court's August 29, 2014 Order stemming from the Supreme Court's August 28, 2014 Opinion. (Dkt. No. 35-1 at 29).

---

[6] *See, e.g.*, *Scheer v. City of Miami*, 15 F. Supp. 2d 1338, 1339 (S.D. Fla. 1998); *Genger v. TR Investors, LLC*, 26 A.3d 180, 199 (Del. 2011); *Taimanao v. Superior Court of Commonwealth of Northern Mariana Islands*, 1994 WL 111190, at *1 (N.M.I. Mar. 1, 1994); *Foster v. Evert*, 751 S.W.2d 42, 44 (Mo. 1988); *Horn v. Gibson*, 352 S.W.3d 511, 517 (Tex. App. 2011).

*District Court Response:* Plaintiffs never challenged, and the District Court never opined, on the issue presented to, and decided by, the Supreme Court in its August 28, 2014 Opinion: that Senator Hansen's convictions constituted crimes involving moral turpitude and, as a result, she was ineligible to serve in the 31st Legislature. (Dkt. No. 5-2 at 36). As this Court noted in its TRO and Permanent Injunction Opinions: "The issue presented to the Supreme Court and that Court's ruling thereon are not before this Court." (Dkt. No. 21 at 2 n.2). Rather, this Court's TRO and Permanent Injunction focused on facts that occurred *after* the Supreme Court's August 28, 2014 Opinion and the Superior Court's August 29, 2014 Order—starting with the effect of the Governor's September 3, 2014 pardon.[7]

As filed in the local and federal courts, the lawsuits were separate matters raising distinctly different issues—without a congruence of parties—and this Court properly treated them as such. *See Skinner v. Switzer,* 131 S. Ct. 1289, 1297 (2011) (*Rooker-Feldman* confined "to cases brought by state-court losers . . . inviting district court review and rejection of [a state court's] judgments. If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction . . .") (internal quotation marks omitted); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (opining that *Rooker-Feldman* doctrine is not triggered when federal plaintiff is not appealing from a state court judgment). Nor is the local court adjudication "inextricably intertwined" with Plaintiffs' claims in federal court, as the factual predicates underlying the claims in federal court had not yet occurred when the case was before the local court. *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d

---

[7] As the Supreme Court stated in its August 28th Opinion: "Notably, to date, Hansen has not been pardoned for her convictions." (Dkt. No. 5-2 at 4).

181, 192-93 (3d Cir. 2006). Because this Court did not exercise any kind of appellate review over the Supreme Court's August 28, 2014 Opinion and the Superior Court's corresponding August 29, 2014 Order, *Rooker-Feldman* is inapplicable here.

**4. Supplemental Jurisdiction.**

<u>*Supreme Court Contention*</u>: The Supreme Court asserted that this Court lacked the authority to adjudicate the local claims because "neither Hansen nor the voters had pleaded any territorial law claims in their complaint, nor requested that the District Court exercise supplemental jurisdiction under 28 U.S.C. § 1367." (Dkt. No. 35-1 at 5). Re-emphasizing this point, the Supreme Court went on to say: "Unquestionably, the District Court lacked the authority to invoke its supplemental jurisdiction to issue an injunction pursuant to 18 V.I.C. § 411 when no such claim was actually raised in the complaints[.]" *Id.* at 23.

<u>*District Court Response*</u>: The Supreme Court has apparently overlooked the following allegations in Plaintiffs' Complaints: (1) "By statute, and under the Due Process Clause, Hansen has a right to cure any alleged defect in her petition, which she has done by obtaining a pardon and by refiling her election papers. (Ex. A); *see also 18 V.I.C. § 411*." (Dkt. No. 1, ¶ 6) (emphasis added); and (2) "Senator Hansen has a due-process and *statutory right under [18 V.I.C.] § 411* to cure any defects to her election petition within a reasonable time after a defect is first noticed." (Dkt. No. 1, ¶ 44) (emphasis added). Thus, Plaintiffs did, in fact, plead the local claim.[8]

---

[8] Building on its faulty premise, the Supreme Court then claimed that the District Court raised the local issue on its own. *See, e.g.*, Dkt. No. 35-1 at 23 ("Section 411 of Title 18 of the Virgin Islands Code—an issue of Virgin Islands statutory law that the District Court raised *sua sponte*."); *id.* at 24 ("Even if we were to look beyond the District Court's decision to grant a temporary restraining order and injunction *sua sponte* on a claim that had never been pled. . .");

Plaintiffs' pleading in this regard was sufficient to invoke supplemental jurisdiction even without a specific cite to 28 U.S.C. § 1367. *See Townsquare Media Inc. v. Brill*, 652 F.3d 767, 774 (7th Cir. 2011) ("A complaint that is filed in . . . a federal district court, and . . . includes state-law as well as federal claims doesn't have to cite 28 U.S.C. § 1367 to invoke supplemental jurisdiction[.]"); *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995) (finding that district court properly exercised supplemental jurisdiction over state claims, even though supplemental jurisdiction was not explicitly pleaded, because federal claim conferred subject matter jurisdiction on the court; the state and federal claims derived from a "common nucleus of operative facts"; and the claims would "ordinarily be expected to be tried in one judicial proceeding."); *United Steel Workers, AFL-CIO-CLC v. No. 1 Contracting C*o., 2009 WL 585503, at *2 n.4 (M.D. Pa. Mar. 6, 2009) (observing that while the complaint's jurisdictional statement did not expressly plead supplemental jurisdiction under 28 U.S.C. § 1367, "there is language that places defendant on notice of state law claims"); *Epstein & L.S.J., LLC v. Fancelli Paneling, Inc.,* 55 V.I. 150, 164 (V.I. Super. Ct. 2011) (citing 61A AM. JUR. 2D PLEADING § 164 (2011) for the proposition that "[w]here a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged satisfy the jurisdictional requirements of the statute. . .". Thus, the Supreme Court's conclusions

---

*id.* at 5 ("the District Court, having ordered briefing on the territorial law issue *sua sponte*. . ."); *id.* at 6 ("At no point did the District Court's September 12, 2014 order explain the source of its . . . authority to resolve an issue of Virgin Islands law *sua sponte* when it had not been pled in the initial complaints."; *id.* at 35 ("[T]he District Court elected to issue a temporary restraining order and permanent injunction—s*ua sponte*. . . ."). Obviously, these statements are incorrect.

15

regarding the absence of supplemental jurisdiction are both factually and legally infirm.

## 5. **Underpinnings of District Court Rulings.**

*Supreme Court Contention:* In a further attempt to challenge this Court's jurisdiction, the Supreme Court's Opinion is replete with assertions that this Court's TRO and Permanent Injunction Opinions were based "solely" or "exclusively" on territorial law. (Dkt. No. 35-1 at 19 n.7, 20, 22, 35).[9]

*District Court Response:* The TRO and Permanent Injunction rulings were based on an analysis of *both* Section 6(b) of the ROA, 48 U.S.C. § 1572(b)—a federal statute—*and* local law, 18 V.I.C. § 411. *See* Dkt. No. 21 at 7-11; Dkt. No. 27 at 9-14. Indeed, in this Court's Permanent Injunction Opinion, the federal and legal components that contributed to the Court's ruling were clearly delineated. Section II(A)(1)(b) was dedicated to the Court's analysis of the Revised Organic Act, and Section II(A)(2)(a) addressed Section 411. And, the importance of both analyses to the Court's ultimate ruling was further reinforced by the Court's explicit language to

---

[9] This assertion by the Supreme Court takes various forms. *See, e.g.*, Dkt. No. 35-1 at 19 n.7 ("The Virgin Islands District Court in this case did not determine any rights under federal law, but granted a temporary restraining order and injunction solely based on an interpretation of Virgin Islands local law."); *id.* at 20 ("We can think of no reason as to why this Court—an Article IV court—should not, at an absolute minimum, be permitted—if not required—to examine the jurisdiction of another Article IV court, particularly when that Article IV court premised its decision entirely on an issue of local law upon which this Court serves as the final arbiter."); *id.* at 22 ("In this case, it is readily apparent that the District Court lacked jurisdiction to issue a temporary restraining order or injunction based solely on its interpretation of Virgin Islands law."); and *id.* at 35 ("[T]he District court elected to issue a temporary restraining order and permanent injunction . . . premised exclusively on its interpretation of Virgin Islands local law.").

that effect.[10] This Court's analysis of, and reliance on, the combination of *both* federal and local law could not be clearer from the Court's Opinions.[11]

### 6. Supremacy Clause.

*Supreme Court Contention:* The Supreme Court expressed its view that the Supremacy Clause is "wholly irrelevant to this case because all courts involved are Article IV courts" (Dkt. No. 35-1 at 17), and that it owed "no deference to the District Court on issues of federal or local law, under the Supremacy Clause or otherwise." *Id.* at 20. The Supreme Court also appeared to subscribe to dicta from a footnote in a Third Circuit opinion that "the Supremacy Clause has no direct role in a conflict between federal and territorial law." *Id.* at 16, quoting *Lewis v. Alexander*, 685 F.3d 325, 346 n.18 (3d Cir. 2012).

*District Court Response:* To the extent that the Supreme Court subscribes to the view that the Supremacy Clause does not apply in the Virgin Islands, this Court respectfully disagrees. In *The St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the V.I.*, 357 F.3d 297 (3d Cir. 2004)—which the Supreme Court did not cite—the Third Circuit expressly held that the principles embodied in the Supremacy

---

[10] The Permanent Injunction Opinion reads: "In addition to addressing the federal issue presented here. . .  the Court cannot resolve Plaintiffs' request for injunctive relief . . . without considering the Virgin Islands Election Code. Plaintiffs argue that, because the Governor's pardon rendered Senator Hansen eligible to be a member of the Legislature, her September 4, 2014 nomination papers—which were timely filed within the statutorily required three days of receiving her notice of disqualification—were valid under local Virgin Islands law. Based on the Court's reading of the relevant provisions of the Virgin Islands Code—together with the foregoing provisions of the Revised Organic Act with which they must be in harmony—the Court agrees." (Dkt. No. 27 at 14-15) (footnote omitted).

[11] The federal issues underlying this Court's rulings were seemingly apparent to the Supreme Court in view of its reference—albeit in a footnote—that it "agree[d] with the District Court's conclusion that the Governor's pardon could not operate retroactively." (Dkt. No. 35-1 at 36 n.19).

Clause apply "to the laws of the Virgin Islands through the Revised Organic Act,"[12] *id.* at 302, and that the National Labor Relations Act ("NLRA") pre-empted a section of the Virgin Islands Wrongful Discharge Act ("WDA") because the WDA conflicted with the NLRA. *Id.* at 305; *see id.* at 302 ("A state or territorial law conflicts with the NLRA if it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").[13] Moreover, even the Supreme Court acknowledged that its decisions cannot be "'repugnant to the Constitution, treaties, or laws of the United States.'" (Dkt. No. 35-1 at 35, quoting 28 U.S.C. § 1260).

The Supremacy Clause—which provides that "the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"—forbids a state to "retard, impede, burden, or in any manner control" the execution of federal law. *McCulloch v. Maryland,* 17 U.S. 316, 317 (1819). If "states" did not include territories, one would have to conclude that the

---

[12] Pursuant to the Revised Organic Act, the Legislature of the Virgin Islands is vested with the power "when within its jurisdiction and not inconsistent with the other provisions of [the Revised Organic Act] . . . to enact . . . laws not inconsistent with any law of the United States applicable to the Virgin Islands[.]" 48 U.S.C. § 1574(c).

[13] *Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012), which the Supreme Court quotes, held that the federal Medicaid Act preempted the Pennsylvania Medicaid statute. In *Lewis*, the Third Circuit cited an earlier iteration of the *St. Thomas-St. John* case, 218 F.3d 232, 240 (3d Cir. 2000), which noted that "a state or territorial law can be unenforceable as preempted by federal law even when the federal law secures no individual substantive rights for the party arguing preemption." The Third Circuit—in *Lewis*—noted that that statement was dicta, and went on to provide its own dicta, in a footnote, that "the Supremacy Clause has no direct role in a conflict between federal law and territorial law. Such a conflict presents no competition between state and federal sovereignty." *Lewis,* 685 F.3d at 346 n.18. The 2000 *St. Thomas-St. John* dicta, and the *Lewis* dicta, point in different directions. However, the 2004 *St. Thomas-St. John* case explicitly held that the principles embodied in the Supremacy Clause applied to the Virgin Islands and pre-empted a section of the Virgin Islands Wrongful Discharge Act.

Framers of the Constitution intended to provide greater autonomy to territories acquired by the United States than to states—an unlikely proposition. Further, in *Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 (3d Cir. 1993), the Third Circuit explained that "Congress has comprehensive powers to regulate territories under the Territorial Clause" of the Constitution. Congress could not exercise those "comprehensive powers" if federal law did not reign supreme in the territories, but instead could be nullified by local law.

**7. Relations between the Superior and Supreme Courts and the District Court.**

*Supreme Court Contention:* The Supreme Court discussed in detail its view of the relationship between local courts and the District Court, including issues regarding jurisdiction and deference. (Dkt. No. 35-1 at 16-22).

*District Court Response:* This Court—as an Article IV Court—will continue to abide by the dictates of the Revised Organic Act, 48 U.S.C. § 1613, which sets forth the relationship between the district court and local courts: "The relations between the courts established by the Constitution or laws of the United States and the courts established by local law [*e.g.,* the Supreme Court, established by the Virgin Islands Legislature pursuant to 4 V.I.C. § 21] with respect to appeals, certiorari, removal of causes, . . . habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings." This Court will also continue to exercise the jurisdiction authorized by the Revised Organic Act, 48 U.S.C. § 1612(a), which

provides that the District Court of the Virgin Islands "shall have the jurisdiction of a District Court of the United States[.]"

**8. Tone.**

Finally, this Court would be remiss if it did not comment on the tone of the Supreme Court's October 24, 2014 Opinion. It goes without saying that this Court respects the fact that the Supreme Court, as the final arbiter of local law, decided the issues of local law as it deemed appropriate. The Court also respects the fact that it is bound by the local law enunciated by the Supreme Court on local issues that may come before it. And, in rejecting Plaintiffs' attempts on two occasions to either bring Bryan's Enforcement Motion into this Court, or to enjoin the Superior Court proceedings therein,[14] it should be apparent that this Court respects the fact that there are some matters that are properly within the province of the federal court and others that are properly within the province of the local court.

What is not worthy of respect, however, is the manner in which the Supreme Court chose to communicate its disagreement with the District Court's rulings. In addition to the types of factual inaccuracies noted above, an inflammatory, accusatory, and condescending tone permeates the Opinion.[15] Our goal as a judiciary

---

[14] *See Bryan v. Fawkes,* 2014 WL 4947086 (D.V.I. Oct. 1, 2014) (Remand Opinion) (Dkt. No. 8); and *Payne v. Fawkes*, 2014 WL 4979449 (D.V.I. Oct. 6, 2014) (Anti-Injunction Act Opinion) (Dkt. No. 34).

[15] For example, the Supreme Court Opinion is peppered with sentences that begin with the words "despite," "although," or "even though," followed by an often factually-inaccurate clause describing something that the District Court had purportedly done—an editorial device that suggests that what is described in the clause involved some improper action by the District Court. *See, e.g.*, *id.* at 5, 6 (containing a series of such statements, which are illustrative of a pattern throughout the Opinion). Of the many instances of the Supreme Court's inappropriate tone, the most egregious example is its citation to the following quotation from a New Jersey

in adjudicating matters that come before us should not be to add sensationalistic heat—especially in cases already steeped in controversy—but rather to bring clarifying light. This includes, of course, the right to disagree as appropriate—as judges and courts sometimes do—but to do so judiciously, respectfully, and with a sense of dignity.

Having set the context for this Court's ruling, including establishing that this Court had, and continues to have, jurisdiction over this matter, the Court will turn to the merits of Plaintiffs' requests.

**B.  Enforcing the Permanent Injunction**

"An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 559 U.S. 700, 714 (2010). "Because injunctive relief 'is drafted in light of what the court believes will be the future course of events, . . . a court must never ignore significant changes in the law or circumstances underlying an injunction[.]'" *Id.* at 714-15 (quoting Wright & Miller § 2961, at 393-94). It is well established that a court that has entered an injunction has continuing jurisdiction over the case to oversee implementation of the injunction. *See United States v. Swift & Co.,* 286 U.S. 106, 114 (1932). Moreover, courts may modify injunctions "pursuant to their more general power to modify or vacate any final decree," and "such

---

case: "A court's deliberate reshaping of an action to substantially overlap an existing suit in a sister [jurisdiction], as the means of frustrating or precluding the prosecution of the prior suit in the other [jurisdiction], is hardly geared towards gaining universal acclaim" but rather represents "an unduly expansive approach to the power to issue such an order." (Dkt. No. 35-1 at 34-35). With that suggestive quotation as a backdrop, the Supreme Court went on to assert that this Court had "usurp[ed] authority" in this case by adjudicating the TRO and Permanent Injunction. *Id.* at 36. However, there is no basis whatsoever for any suggestion by the Supreme Court that this Court reshaped this action—let alone *deliberately* reshaped this action—by any means and for any purpose.

modification has become a routine aspect of modern litigation." *United States v. Local 560 (I.B.T.)*, 974 F.2d 315, 330 (3d Cir. 1992).

The Permanent Injunction in this case contained analyses grounded in both federal and local law. This Court will examine Plaintiffs' Motion to Enforce as it relates to each area because the intervening October 24, 2014 Opinion of the Supreme Court has impacted each area of the analysis differently.

### 1. Federal Law Underlying the Permanent Injunction

In adjudicating Plaintiffs' request for a permanent injunction, this Court addressed federal law—Section 6(b) of the Revised Organic Act, 48 U.S.C. § 1572(b). The Court found that "Senator Hansen's convictions for willful failure to file income tax returns no longer rendered her ineligible—or otherwise posed any barrier to her eligibility under Section 6(b) of the Revised Organic Act—to be a member in the 31st Legislature of the Virgin Islands." (Dkt. No. 27 at 14). Similarly, the Court based its grant of declaratory relief on its interpretation of the Revised Organic Act, when it declared that the Governor's pardon "removed the impediment under Section 6(b) of the Revised Organic Act that would have rendered Senator Hansen ineligible to run for the office of Senator in the Legislature of the Virgin Islands." (Dkt. No. 27 at 31).

The Supreme Court's October 24, 2014 Opinion did not affect the federal law aspects of the Permanent Injunction. In fact, the Supreme Court apparently agreed with this Court's holding because it asserted that it "has never held, whether in its September 12, 2014 order or in the [October 24, 2014] opinion, that Hansen—despite having received a pardon from the Governor—is still not eligible to serve in the 31st Legislature." (Dkt. No. 35-1 at 44). The Supreme Court distinguished between "access to the ballot"—which would implicate the ability of Senator Hansen to cure under local law—and "other means through which a candidate might

be able to run and be elected to office—*e.g.*, through a write-in candidacy" to which the Supreme Court gave its blessing. *Id.* at 44-45. It wrote that "if Hansen were to mount a write-in candidacy—as she is entitled to do so under Virgin Islands law—and be successfully elected by the voters, the August 29, 2014 order would not serve as an impediment to her certification as a winner of the general election and eventual swearing-in as a member of the 31st Legislature." *Id.* at 45.

Accordingly, the portion of the Permanent Injunction that relies on federal law remains in force and no further action is required by this Court.

### 2.   Local Law Underlying the Permanent Injunction

Local election law, 18 V.I.C. § 411, was also integral to the Permanent Injunction. Because the Supreme Court had not previously adjudicated whether the "cure" language in 18 V.I.C. § 411 applied in the circumstances presented here, well-established Third Circuit case law required this Court to "predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law." (Dkt. No. 27 at 17, quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.3 (3d Cir. 2007)). Analyzing that issue, this Court found that Senator Hansen could cure her qualification defect and have her name placed on the general election ballot. (Dkt. No. 27 at 22).[16]

---

[16] While this Court does not challenge the Supreme Court's contrary ruling, the description of this Court's Opinions by the Supreme Court should be clarified. First, this Court's discussion of *Moorhead v. Gov't of the V.I.,* 18 V.I. 237 (V.I. Terr. Ct. 1980), reflected the Court's reliance on that case for the interplay between 18 V.I.C. Sections 411(b) and 411(c), *see* Permanent Injunction Opinion, Dkt. No. 27 at 15-22, not Sections 411(c) and 412 as the Supreme Court asserts and then proceeds to challenge. *See* Supreme Court Opinion, Dkt. No. 35-1 at 41 n.24. Thus, this Court did not "assume" that the cure provision in Section 411(c) applied to disqualification in Section 411(b), (Dkt. No. 35-1 at 40 n.22), but actually analyzed that issue, including by relying on *Moorhead.* (Dkt. No. 27 at 15-22).

Second, the Supreme Court chided this Court for relying "on former provisions of the Virgin Islands Supreme Court Internal Operating Procedure that had been repealed," as new

Plaintiffs now ask this Court to enforce a Permanent Injunction that was issued before the Supreme Court definitively addressed the issue of local law upon which the granting of the Permanent Injunction partially hinged. The Supreme Court did not agree with this Court's analysis as to the applicability of Section 411; held that Senator Hansen had no right to cure; and enforced the August 29, 2014 Order directing that her name be removed from the ballot. Because the Supreme Court is the ultimate arbiter of local law, this Court will give effect to its rulings.

The Court is now confronted with the question of identifying the impact on the Permanent Injunction wrought by the Supreme Court's ruling on the issue of local law. In their Emergency Motion, Plaintiffs assert, *inter alia*, that allowing the Supreme Court to countermand the Permanent Injunction would violate the Supremacy Clause and fundamental principles of comity, and that this Court has the power and duty to enforce its valid injunctions. (Dkt. No. 35 at 2, 5). Plaintiffs also contend that this Court's Permanent Injunction "cannot be undone by a territorial court even if it subsequently concludes that this Court's ruling on an issue of local law was erroneous[.]" *Id.* at 10.[17]

---

procedures had been in effect since April 1, 2014. (Dkt. No. 35-1 at 30 & nn. 15, 16). This Court erred in that regard and takes full responsibility for not heeding the caveat on the Supreme Court's website, where the now-repealed rules are published, that "much of the information provided by this website is subject to change," and readers should check its accuracy. In any event, this Court did not "disregard[ ] the [Supreme Court's] September 12, 2014 order on the ground that it was unpublished," as the Supreme Court claims. (Dkt. No. 35-1 at 30). Rather, this Court discussed the September 12 Order, including the interplay between Sections 411 and 412, and arrived at its conclusion (Dkt. No. 27 at 22-28), albeit one with which the Supreme Court has disagreed.

[17] The cases upon which Plaintiffs rely to support this proposition are factually inapt. *See General Atomic Co. v. Felter*, 434 U.S. 12, 15 (1977) (involving state court injunction enjoining plaintiff from filing action in federal court); *Penn General Casualty Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) (*in rem* federal and state proceedings); *Swann v. Charlotte-Mecklenburg Board of Education,* 501 F.2d 383, 384 (4th Cir. 1974) (express exception to Anti-Injunction Act which allowed federal court to use its All Writs Act powers to enjoin state court proceedings); and *National Private Truck Council v. Oklahoma  Tax Comm'n*, 515 U.S. 582,

Notwithstanding Plaintiffs' arguments, under the circumstances here this Court will not ignore the aforementioned intervening change in controlling local law. *See Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941) (holding that "until such time as a case is no longer *sub judice*, the duty rests upon federal courts to apply state law. . . in accordance with the *then controlling decision of the highest state court*") (emphasis added); *Flavor Corp. of Am. v. Kemin Indus., Inc.*, 503 F.2d 729, 732 (8th Cir. 1974) ("It is well established that injunctions do not give rise to vested rights; they enforce only rights existing under *current law* and conditions.") (citing *United States v. Swift & Co*., 286 U.S. 106 (1932) (emphasis added)); *cf. Highway J Citizens Group, U.S. v. U.S. Dep't of Transp.*, 656 F. Supp. 2d 868, 881-82 (E.D. Wis. 2009) (opining that a change in or clarification of law is a compelling reason that permits a court to revisit an issue).

Case law concerning motions to modify injunctions pursuant to Fed. R. Civ. P. 60(b)(5) is helpful in guiding this Court, as these cases provide that injunctions may be modified if there is a significant change in the controlling law.[18] The principles underlying those cases are applicable here. In the context of Rule 60(b)(5), a "court errs when it refuses to modify" a continuing injunction "in light of *bona fide*, significant change[s] in subsequent law." *Agostini v. Felton*, 521 U.S. 203, 239 (1997) (allowing modification). The Third Circuit has "never decided the specific question of whether a court can *sua sponte* grant a party relief from judgment under Rule 60(b)." *Ocean City Costa Rica Inv. Group, LLC v. Camaronal Dev. Group, LLC*, 571 F. App'x 122, 127 (3d Cir. 2014). However, the Third Circuit has noted that the majority of circuits

---

590-91 (1995) (uncontroversial axiom that comity between state and federal courts is a two-way street).

[18] The situation here is analogous. Prior to this Court's ruling, there was no controlling law on the specific "right to cure" issue on which the Supreme Court has now ruled. This Court predicted how the Supreme Court would have decided the issue and the Supreme Court has ruled otherwise.

allow *sua sponte* relief under Rule 60(b), and stated that, although it was not resolving the question, "much favors the well-reasoned decisions of [those circuits] that allow a court to grant *sua sponte* relief." *Id.*

Moreover, "[t]he source of the power to modify" an injunction "is of course the fact that an injunction often requires continuing supervision by the issuing court and *always* a continuing willingness to apply its power and processes." *System Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961) (emphasis added). This is a recognition that the circumstances in which an injunction is established are not static, permitting courts the flexibility of reassessing whether facts or governing law may have changed, thus warranting a change in the terms of an injunction. While no motion to modify was before this Court, the fact that Plaintiffs asked the Court to enforce its Permanent Injunction in light of the Supreme Court's ruling provides sufficient justification to review the surrounding circumstances to determine whether enforcement is appropriate. Here, in the face of a contrary decision by the Supreme Court on an issue of local law that underlies this Court's earlier ruling, this Court will not apply its power to enforce its Permanent Injunction.

Based on the October 24, 2014 Supreme Court Opinion which pronounced local decisional law—amounting to a "significant change in controlling law"—this Court declines to enforce its Permanent Injunction as requested by Plaintiffs. In doing so, the Court will be applying state law in accordance with the presently controlling decision of the Supreme Court.

This ruling also resolves Plaintiffs' Emergency Motion for a TRO because that matter essentially seeks the same relief as Plaintiffs' Motion to Enforce the Permanent Injunction.

## III.   CONCLUSION

For the foregoing reasons, this Court denies Plaintiffs' Emergency Motion to Enforce Permanent Injunction (Dkt. No. 35) and Plaintiffs' "Emergency Motion for a Temporary Restraining Order Directing Defendants to Preserve the Ballots with Hansen's Name on Them for the Upcoming General Election." (Dkt. No. 36).

An Order to this effect was previously issued. (Dkt. No. 39).

Date:   November 3, 2014                    _____/s/_____
                                            WILMA A. LEWIS
                                            Chief Judge